**KIM D. DAWSEY, Petitioner**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, Respondent,
HONORABLE TERRITORIAL COURT JUDGE BRENDA J.
HOLLAR, Nominal Respondent**

D. Ct. Civ. No. 129-95

District Court of the Virgin Islands

Div. of St. Thomas and St. John

June 13, 1996

CHARLES HERNDON, ESQ., St. Thomas, U.S.V.I., *for Petitioner*

RICHARD DAVIS, ESQ., Assistant Attorney General, V.I. Department of Justice, St. Thomas, U.S.V.I., *for Respondent*

LEON KENDALL, ESQ., General Counsel, Territorial Court of the Virgin Islands, St. Thomas, U.S.V.I., *for Nominal Respondent*

MOORE, *Chief Judge*

## MEMORANDUM OPINION

This matter is before the Court on petition by Kim D. Dawsey for writ of mandamus on the ground that the nominal respondent, Territorial Court Judge Brenda J. Hollar, has erroneously failed to grant the motion of the respondent, the Government of the Virgin Islands, for dismissal of the criminal charges filed against him. The Court having given all the parties an opportunity to brief this matter, and having reviewed the record, and for the reasons set forth below, the petition will be granted.[1]

## FACTS

The undisputed facts from the record are that petitioner participated in a family dispute involving domestic violence, was arrested on May 6, 1995, and was charged with the misdemeanor of aggravated assault and battery in violation of V.I. CODE ANN. tit. 14, § 298. On July 6, 1995, after further investigation, the Government filed a motion to dismiss the criminal matter, with prejudice, reciting that

> the victim in this matter now states that the facts as first alleged are not true and no longer wishes to pursue this matter. Without the testimony of the victim as originally reported, the government would not be able to meet its burden of proof beyond a reasonable doubt.

*Government of the Virgin Islands v. Dawsey*, Terr.Ct.Crim. No. 232/1995 [ *"Dawsey"*], Motion To Dismiss dated July 6, 1995 [ *"Dawsey Motion"*]. In response to a request from Judge Hollar,[2] the Government supplemented the Dawsey Motion on July 11, 1995 with an affidavit from the Assistant Attorney General ["AAG"] handling the case, which recited the factual basis for the Dawsey Motion uncovered during her preparation of the prosecution:

---

[1] Nominal respondent was ordered to submit a brief on the merits of this matter, and instead has moved this Court first to clarify and then to reconsider its denial of nominal respondent's motion to dismiss the petition. We denied that motion because this Court clearly has mandamus jurisdiction over the Territorial court and because we would have to address the merits to decide whether the petition states a claim upon which relief can be granted or is somehow inappropriate. No further clarification is warranted. This matter has been pending in this Court altogether too long, and, nominal respondent having elected not to submit a brief, we now proceed to decide its merits.

[2] *See Amicus Curie* Brief filed October 10, 1995.

3. That affiant interviewed the complaining witness, a minor and determined that the original facts, as alleged, were not true. The minor had recanted his story. The affiant further determined that the minor was not being influenced by his father, the defendant.

4. The defendant provided a statement by an witness to the event that verifying [sic] the new version of the incident.

5. The new version of the incident was also substantiated by Dr. Tom Tyne, who would testify as why the complaining witness filed the original complaint.

6. In light of the issues raised with the minor and his parents, the Government has filed actions in Family Court and feel [sic] that the issues within this family can best be addressed in that court.

7. In light of the victim's recantation of the facts, the witness provided by the defendant, the counselor's version of the facts and the remedies available in family [court], this affiant believes that the Government will be unable to prove the charges as filed. Furthermore, the action in Family Court can best address the situation.

*Dawsey*, Affidavit of Deborah Kleinman Robinson dated July 11, 1995 [ *"Dawsey* Affidavit"].

On July 26th, the nominal respondent declined to grant the *Dawsey* Motion, even as justified by the supporting affidavit. Apparently believing that the motion to dismiss was not made in good faith, the judge noted that, "before ruling on the matter, the Court must be assured that the dismissal is not 'contrary to the public interest' and that the motion is made in 'good faith.'" *Dawsey*, Order dated July 26, 1995 ["*Dawsey* Order of July 26"] (quoting *United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975), *cert. denied*, 425 U.S. 971 (1976)). Judge Hollar then required the prosecutor to submit yet more justification, ordering that

the Government have the victim and his mother submit separate affidavits, setting forth what portion of the original version of the facts is false; the reason they wish to discontinue the present action; whether they have been threatened or coerced in any manner regarding the prose-

177

cution of this matter; and whether their present position, not to pursue this matter, has been influenced in any way by the defendant; and it is further

**ORDERED,** that the Government submit the statement by the "witness" to the event, as referred in the supplemented motion, *verifying* the true version of the incident, and to provide Dr. Tom Tyne's substantiation of the new version and why he believes the complaining witnesses concocted the original version; and it is further

ORDERED that Government disclose the action filed in Family Court which addressed the issues involved . . . .

*Dawsey* Order of July 26. Dawsey then filed this petition for a writ of mandamus, and the respondent has filed an *amicus curiae* brief in support of the petition. As we noted, Judge Hollar has declined to submit a brief on the merits.[3]

## DISCUSSION

We first discuss the strict requirements for mandamusing a lower court judge where judicial discretion is involved. We then consider whether the nominal respondent erred in not granting the respondent's motion to dismiss. Finally, if there is error, we then determine if the likely consequences of that error warrant granting the writ.

### The Writ of Mandamus — Requirements

We have earlier ruled in this case that the Appellate Division has undoubted power and jurisdiction to hear and determine petitions, "issue writs . . . and make mandatory orders and all other orders necessary or appropriate in aid of its appellate jurisdiction" over the judges of the Territorial Court. 4 V.I.C. § 34.[4] The Supreme Court has summarized the remedy of the writ:

---

[3] *See supra,* n.1.

[4] We therefore do not reach whether mandamus authority under V.I. Code Ann. 5, § 1361 still has any applicability to the Appellate Division now that initial and original jurisdiction over local matters has been transferred to the Territorial Court. Even assuming section 1361 applies to this Court, its language specifically limits that applicability to controlling ministerial acts. 5 V.I.C. § 1361(a) ("The district court may issue a mandatory order to any inferior court, corporation, board, officer, or person, to compel

 The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations. As we have observed, the writ "has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" And, while we have not limited the use of mandamus by an unduly narrow and technical understanding of what constitutes a matter of "jurisdiction," the fact still remains that "only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy."

. . . .

As a means of implementing the rule that the writ will issue only in extraordinary circumstances, we have set forth various conditions for its issuance. Among these are that the party seeking issuance of the writ have no other adequate means to attain the relief he desires, and that he satisfy "the burden of showing that [his] right to issuance of the writ is 'clear and indisputable.'" Moreover, it is important to remember that issuance of the writ is in large part a matter of discretion with the court to which the petition is addressed.

*Kerr v. United States*, 426 U.S. 394, 402-03, 48 L. Ed. 2d 725, 96 S. Ct. 2119 (1976) (citations omitted). While grant of the writ is discretionary, it is called for when the petitioner shows that the lower court committed a "clear abuse of discretion," *Mallard v. United States District Court*, 490 U.S. 296, 309, 104 L. Ed. 2d 318, 109 S. Ct. 1814 (1989), and that the error will cause irreparable injury if it goes uncorrected, *United States v. Wexler*, 31 F.3d 117, 128 (3d Cir. 1994) (citations omitted), *cert. denied*, 131 L. Ed. 2d 133, 115 S. Ct. 1251 (1995).[5] The factors here pertinent to establish the extraordinary circumstances justifying mandamus are: (1) clear abuse of discretion amounting to a usurpation of power; (2) clear and indisputable right to relief; (3)absence of any other adequate means

performance of an act which the law specially enjoins as a duty resulting from an office . . . . although the order shall not control judicial discretion."); *see, e.g., Virgin Islands Hous. Auth. v. Smith*, 26 V.I. 248, 762 F. Supp. 661 (D.V.I. App. 1991), *vacated as moot*, 953 F.2d 1382 (3d Cir. 1992).

[5] Thus disposed of is the nominal respondent's argument that the petition must be dismissed because mandamus cannot control judicial discretion.

to receive that relief; and (4) irreparable injury if the error goes unremedied.

### The Motion To Dismiss and Rule 48(a)

In considering whether the nominal respondent erred in not granting the respondent's motion to dismiss, we are required to limn the interface of the respective spheres of discretion assigned to the executive and the judiciary by constitutional separation of powers. The prosecutorial function is vested in the executive department of the Government of the Virgin Islands known as the Department of Justice, headed by the Attorney General of the Virgin Islands. 3 V.I.C. §§ 111, 112(A). The Attorney General has the power and the duty "to prosecute in the inferior courts all offenses against the laws of the Virgin Islands." 3 V.I.C. § 114(a)(2). Courts in this jurisdiction have long recognized that, based on the constitutional doctrine of separation of powers, "the Attorney General has been given the mantle of broad discretion and *exclusive* control over the misdemeanor prosecutorial function." *Tonkin v. Michael*, 9 V.I. 172, 179, 349 F. Supp. 78 (D.V.I. 1972) (emphasis added). As there pointed out,

> it is the Attorney General who must determine whether, where and how to prosecute. For good or for ill, certain wide areas of our criminal justice system must be committed to the discretion of public officials. That public prosecutors do exercise enormous discretionary authority is widely recognized.

*Id.*[6]

██ The prosecutor at common law, and in federal courts, had unbridled discretion simply by entry of a *nolle prosequi* to dismiss a criminal prosecution without any action of court. *In re Confisca-*

---

[6] The dissent chooses to ignore this case, which is the equivalent of a decision of this Appellate Division and the closest thing we have to controlling authority in this jurisdiction. *Tonkin v. Michael*, 9 V.I. 172 (D.V.I. 1972), was an appeal from the predecessor of the Territorial Court to the District Court decided under the appellate procedures established by the Revised Organic Act before the 1984 amendments which set up the Appellate Division. See Section 23A(b) of the Revised Organic Act of 1954, 48 U.S.C. § 1613a(b). The Revised Organic Act of 1954 may be found at 48 U.S.C §§ 1541-1645 (1995), *reprinted in* V.I. CODE ANN., Historical Documents, 73-177 (codified as amended) (1995) ["Revised Organic Act"].

*tion Cases*, 74 U.S. 454, 457, 19 L. Ed. 196 (1873). We therefore consider whether any constraints have been placed on this absolute prosecutorial discretion in criminal proceedings brought in the Territorial Court. Although there is no specific provision in the Virgin Island Code or Rules of the Territorial Court, we find that Rule 48 of the Federal Rules of Criminal Procedure governs dismissal of a criminal case in that court.[7] Specifically, Rule 48(a), allowing dismissal on motion by the prosecutor, provides that the prosecutor "may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate." FED. R. CRIM. P. 48(a). While the Supreme Court has observed that Rule 48(a) "obviously vest[s] some discretion in the court, the circumstances in which that discretion may properly be exercised have not been delineated by this Court," noting that the principal object of the 'leave of court' requirement is apparently to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection. *Rinaldi v. United States*, 434 U.S. 22, 29 n.15, 54 L. Ed. 2d 207, 98 S. Ct. 81 (1977) (citations omitted), *rev'g sub nom. In re Washington*, 544 F.2d 203 (5th Cir. 1976) *(en banc)*.

■ Under this interpretation that the words 'by leave of court' in Rule 48(a) limit the trial judge's discretion to protecting the defendant from prosecutorial harassment, the nominal respondent clearly has exceeded her authority to interfere with the prosecutor's discretion to dismiss a case and has usurped the executive's power. The prosecutor moved for dismissal *with prejudice*, which would forever preclude the Government from reprosecuting this case. If the judge's only role in ruling on a motion to dismiss is to

---

[7] The Federal Rules of Criminal Procedure apply to criminal proceedings in the Territorial Court, absent an express rule or provision in the law or the rules to the contrary. "The practice and procedure of the Territorial Court shall be governed by the Rules of the Territorial Court and, to the extent not inconsistent therewith, by the . . . Federal Rules of Criminal Procedure." TERR. CT. R. 7. We are thus bound by the interpretation of these federal rules by the United States Supreme Court and the United States Court of Appeals for the Third Circuit, and should find persuasive procedural decisions of other United States Courts of Appeals, even though these rules are being applied in a context of purely local proceeding in the Territorial Court, a court created by local, Virgin Islands law. *See In re M.B.*, 909 F. Supp. 298, 302 n.17 (D.V.I. APP. 1995), *as amended by* V.I. BBS 94CR111A.DT3 (D.V.I. APP. Jan. 23, 1996).

protect a defendant from future prosecutorial harassment, a dismissal with prejudice would allow no discretion for the nominal respondent to question the AAG's motivation under this view of Rule 48(a).

We reach the same result under the interpretation espoused in the 1975 opinion of the Court of Appeals for the Fifth Circuit relied on by the nominal respondent, namely, that the exercise of the executive's discretion to dismiss a criminal prosecution "should not be judicially disturbed unless clearly contrary to manifest public interest." *Cowan*, 524 F.2d at 513.[8] We emphasize that even the *Cowan* court found that the judge had abused his limited discretion in refusing to grant the government's motion to dismiss. While the Supreme Court had the benefit of the *Cowan* panel's reasoning when it decided *Rinaldi* in 1977, the Court did not expressly approve the *Cowan* reading of Rule 48(a). See Rinaldi, 434 U.S. at 29-30 n.15. Just as the Supreme Court did in *Rinaldi* and the court of appeals did in *Cowan*, we find on the facts of this case that the trial court abused its discretion in failing to grant the motion to dismiss, even assuming the nominal respondent had the discretion to assure that the dismissal was not contrary to the public interest and that the motion is made in good faith.

We note that in the wake of the Supreme Court's opinion in

---

[8] A more complete quotation gives the court's reasoning.

> [I]t seems altogether proper to say that the phrase "by leave of court" in Rule 48(a) was intended to modify and condition the absolute power of the Executive, consistently with the Framer's concept of Separation of Powers, by erecting c check on the abuse of Executive prerogatives. But this is not to say that the Rule was intended to confer on the Judiciary the power and authority to usurp or interfere with the good faith exercise of the Executive power to take care that the laws are faithfully executed. . . . The Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated. The exercise of its discretion with respect to the termination of pending prosecutions should not be judicially disturbed unless clearly contrary to manifest public interest. . . .

*United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975), cert. denied, 425 U.S. 971 (1976) (citation omitted). We emphasize after concluding that Rule 48(a) gives the district judge this authority, the Cowan court nevertheless found that the judge had abused this limited discretion in refusing to grant the government's motion to dismiss.

*Rinaldi*,[9] the Fifth Circuit judges again considered this issue en banc and restored some of the discretion *Cowan* purported to take away from the prosecutor by emphasizing the very limited circumstances which will justify judicial interference. *United States v. Hamm*, 659 F.2d 624 (5th Cir. 1981) (*en banc*), in which the majority of the judges of the 5th Court of Appeals again reversed the trial court, which had refused to grant dismissal. The court expressly followed the Supreme Court's lead in holding "that the 'leave of court' requirement of Rule 48(a) is primarily intended to protect the defendant against prosecutorial harassment." *Id*. at 628. *Hamm* retreats somewhat from *Cowan* by quoting restrictive language from that opinion and adding even more limiting language to it: "We continue to hold that even when the defendant consents to the motion to dismiss, the trial court, *in extremely limited circumstances in extraordinary cases*, may deny the motion when the prosecutor's actions *clearly indicate* a 'betrayal of the public interest.'" *Id*. at 629 (quoting *Cowan*, 524 F.2d at 514) (emphasis added). In short, "unless the court finds that the prosecutor is clearly motivated by considerations other than [her] assessment of the public interest, it must grant the motion to dismiss." *Hamm*, 659 F.2d at 630. The only circumstances specifically mentioned by the majority as constituting improper motivation to dismiss are the prosecutor (1) receiving a bribe, (2) wanting to attend a social event rather than trial,[10] or (3) personally disliking the victim of the crime. *Id*. A plea agreement with the defendant that the prosecutor will dismiss the case if the judge refuses to impose the agreed-upon sentence would also be such a circumstance. *Id*.[11]

■ Judge Hollar thus was required to grant the *Dawsey* Motion unless she had some affirmative basis to believe that the dismissal

---

[9] In *Rinaldi v. United States*, 434 U.S. 22, 29 n.15, 54 L. Ed. 2d 207, 98 S. Ct. 81 (1977), the Supreme Court reversed an *en banc* decision of the Fifth Circuit Court of Appeals, *sub nom.*, *In re Washington*, 544 F.2d 203 (5th Cir. 1976).

[10] *See United States v. Weber*, 721 F.2d 266 (9th Cir. 1983).

[11] While the prosecutor in the Hamm case may have mislead defense counsel to believe that the judge had agreed to the sentence when in fact the court had not so agreed, the majority of the court looked to the motivation of the prosecutor at the time of the decision to dismiss and found that the motion was not prompted by such improper motive. *United States v. Hamm*, 659 F.2d 624, 630 (5th Cir. 1981) (en banc).

was clearly motivated by considerations contrary to the public interest. *Rinaldi*, 434 U.S. at 30.[12] Nothing recited in her *Dawsey* Order suggests even a hint of such betrayal of the public interest by the Government or the AAG handling this case. Judge Hollar does express her concern about what she felt to be 'overwhelming federal presence':

> The defendant, according to the record, is an Assistant [sic] U.S. Marshal. This Court would be remiss, given the turn of events, if it did note [sic] the overwhelming "federal presence" that has existed throughout the pendency of this action. At every scheduled hearing, a member of the U.S. Marshal Service has escorted the defendant to court or has been present in court or immediately outside the courtroom. At one point, the U.S. Marshal and the defendant, seated themselves in the undersigned's office, a restricted area, reportedly "waiting" for the Court to act on the dismissal of this action. *If* this type of "undue influence" has played any part in the Government's decision to dismiss this action, the record should so reflect instead of any **pretextual reasons**.

*Dawsey* Order of July 26 (bold emphasis added).

We do not agree that this concern was well-founded. We do not find it unexpected that the petitioner, himself a United States Deputy Marshal, should be accompanied by one or more of his co-workers at various court appearances. It is also not surprising that the petitioner's supervisor, the United States Marshal, should come with him to the judge's office to obtain a copy of the motion and dismissal order, which it was reasonable for them to expect would have been signed. A criminal charge of any nature, even a misdemeanor, is obvious cause for concern to someone like petitioner who is involved in federal law enforcement. It is, however, somewhat surprising that a Territorial Court judge would be inclined to equate this "federal presence" with "undue influence" and to speculate that it may have been the "real reason", as opposed to a "pretextual reason," the Virgin Islands Department of

---

[12] *United States v. Hayden*, 860 F.2d 1483 (9th Cir. 1988); *Hamm*, 659 F.2d at 631; *United States v. Ammidown*, 162 U.S. App. D.C. 28, 497 F.2d 615 (D.C. Cir. 1973).

Justice moved to dismiss the case against petitioner. By no stretch of the imagination can the facts of this case qualify as the kind of extremely limited circumstances in an extraordinary case where the prosecutor's actions indicate a betrayal of the public interest.

■ Moreover, the nominal respondent has turned the presumption that the prosecutor acts in good faith[13] on its head and has improperly put the burden on the AAG to show that dismissal is in the public interest. "The trial judge cannot merely substitute [her] judgment for that of the prosecutor." Hamm, 659 F.2d at 631. Although Rule 48(a) does not require a statement of reasons for the motion to dismiss,[14] the prosecutor here supplied sufficient reason and basis for dismissal in the very body of the *Dawsey* Motion itself, as filed on July 6, 1995, namely, that "the victim . . . now states that the facts as first alleged are not true and no longer wishes to pursue this matter [and that] without the testimony of the victim as originally reported, the government would not be able to meet its burden of proof beyond a reasonable doubt." There was thus no basis for the trial court to have required the Government to supply even the additional affidavit the AAG filed on July 11th.[15]

■ The remainder of the Order of July 26 is an effort by the nominal respondent to second guess the prosecutor's evaluation of the facts of the case and its prosecutorial merit, clearly a task which must be left exclusively to the executive branch. Apparently based on other allegations the nominal respondent became aware of during the course of pretrying the case, the judge observed that the "contention by the Government that victim has recanted his initial version of what happened is 'surprising.'" She added that, "since

---

[13] *United States v. Dyal,* 868 F.2d 424 (11th Cir. 1989); *United States v. Olson,* 846 F.2d 1103 (7th Cir.), *cert. denied,* 488 U.S. 850, 102 L. Ed. 2d 104, 109 S. Ct. 131 (1988); *United States v. Cowan,* 524 F.2d at 514.

[14] As pointed out in *Hamm* and *Cowan,* a preliminary draft of Rule 48 included language that the prosecutor "'may file a dismissal of the indictment or information with a statement of the reasons therefor,'" which was deleted from the final version as promulgated by the Supreme Court. *Cowan,* 524 F.2d at 510-11; *Hamm,* 659 F.2d at 631 n.23.

[15] The argument of nominal respondent that the petition is moot or premature because the AAG has not complied with the *Dawsey* Order of July 26 to supply additional affidavits similarly fails.

significant facts stated by the police officer can be independently corroborated, the Court needs to know what portion of the victim's version has been recanted and *is not true." Dawsey* Order of July 26.

 We hold that the trial court simply does not need to know this kind of information about the prosecutorial merit of a case because the court cannot substitute its judgment for that of the prosecutor. As we have already pointed out, the text of the Dawsey Motion in and of itself shows that the AAG had evaluated the evidence in the case and had found that it was based on false statements, i.e., that the complaining witness had concocted the original version. It is, after all, very much in the public interest that false and fraudulent evidence not be used to prosecute a citizen.[16] The Government, through its AAG, investigated the facts, weighed and balanced the interest of the public, and concluded that it was not in the public interest to pursue the prosecution. Without some credible evidence of the kind of improper prosecutorial motivation which indicates a betrayal of the public interest, e.g. bribery or other corruption, personal dislike for the victim, interference with the sentencing function of the court, "neither this court on appeal nor the trial court may properly reassess the prosecutor's evaluation of the public interest." *Hamm,* 659 F.2d at 631.[17]

---

[16] This is especially so in the context of a family dispute such as this where the parties have gotten back together. The same prosecuting authority has determined that this family dispute would be best handled in the Family Division of the Territorial Court. Courts and common experience recognize the high percentage of victims of reported domestic violence who ultimately refuse to prosecute. Especially where the victim wants no part of the litigation and reestablishes the family relationship, pursuing the criminal case would be a waste of time, effort and prosecutorial resources and could be detrimental to the overall interests of the public. *See United States v. Ammidown,* 497 F.2d at 621. (Prosecutor alone is in position to evaluate government's prosecutorial resources and number of cases it is able to handle).

[17] And this is the crux of our difference with the dissent. Whatever the words 'by leave of court' mean, they cannot be construed to authorize the trial judge to second-guess the exercise of prosecutorial discretion in evaluating the validity and strength of the evidence available to prosecute the case. We have fully considered that the nominal respondent may have had access to contrary statements of fact during the pretrial of this case, but the assessment of those factual conflicts are committed under our system to the sound discretion of the prosecutor. While the Supreme Court has never explicitly approved any purpose of 'by leave of court' other than to protect the defendant from harassment by the prosecutor, the Court surely would never agree that these words were intended to give one branch of government the discretion to harass a co-equal branch.

## The Writ of Mandamus — Requirements Met

The first requirement for mandamus is satisfied by the lower court's clear abuse of discretion which usurped the executive's constitutionally separate power to dismiss this prosecution with prejudice. The dissent makes the assertion that "trial courts have the power to enter erroneous orders," citing *Will v. United States,* 389 U.S. 90, 98 n.6, 19 L. Ed. 2d 305, 88 S. Ct. 269 (1967). If by this reference is meant that trial judges sometimes enter orders which are later held to be erroneous, we have no quarrel with the statement. If, however, the dissent is asserting the proposition that a trial judge has the discretion to deliberately enter an order he knows to be erroneous, we strenuously disagree and submit that neither *Will,* nor any other Supreme Court case, supports such a proposition.[18] It makes no difference here whether the nominal respondent has ruled on the motion. Our holding is that she had no discretion not to grant the respondent's motion to dismiss. By withholding ruling until she had more evidence from the Government, the lower court's "conduct amounted to a judicial usurpation of power such that it acted without its prescribed jurisdiction . . . ." *DeBeers Consolidated Mines, Ltd. v. United States,* 325 U.S. 212, 217, 89 L. Ed. 1566, 65 S. Ct. 1130 (1945); see *Roche v. Evaporated Milk Association,* 319 U.S. 21, 26, 87 L. Ed. 1185, 63 S. Ct. 938 (1943); *Kerr,* 426 U.S. at 402.

The second requirement — petitioners clear right to have this misdemeanor prosecution dismissed — has also been indis-

---

[18] The first two sentences omitted from the footnote quoted by the dissent (*infra* n.2) shed more light on the Court's reference:

> Nor do we understand the Government to argue that a judge has no power to enter an erroneous order. Acceptance of this semantic fallacy would undermine the settled limitations upon the power of an appellate court to review interlocutory orders. Neither "jurisdiction" nor "power" can be said to "run the gauntlet of reversible errors." Courts faced with petitions for the peremptory writs must be careful lest they suffer themselves to be misled by labels such as "abuse of discretion" and "want of power" into interlocutory review of nonappealable orders on the mere ground that they may be erroneous. "Certainly Congress knew that some interlocutory orders might be erroneous when it chose to make them nonreviewable."

*Will v. United States,* 389 U.S. 90, 98 n.6, 19 L. Ed. 2d 305, 88 S. Ct. 269 (1967) (citations omitted).

putably established. Skipping to the fourth requirement, the petitioner will be irreparably harmed if the trial court's error is not corrected. He is still subject to a criminal charge despite the decision of the Government not to prosecute. Petitioner is also subject to an administrative proceeding which could put his very livelihood and that of his family in jeopardy. In addition, the conditions of his bail unjustifiably prevent him from traveling out of the Territory without permission. The fourth requirement for mandamus thus has been met.

Regarding the final requirement for the writ to issue, we find that the petitioner has no other adequate means to obtain relief to prevent this irreparable harm from continuing. Two separate arms of the Virgin Islands Government are at an impasse — the executive will not supply the information required by the judiciary and the court will not grant the *Dawsey* Motion without that information.[19] What does the trial judge expect to do if the prosecutor refuses to put on a case? Hold the AAG in contempt? Call witnesses itself and put on the evidence? We have been able to find no provision in the Virgin Islands Code authorizing the appointment of a special prosecutor in these circumstances. This is the very impasse recognized and anticipated in *Cowan*: "the Attorney General would still have discretion to decline to move the case for trial; in which event, the court would be without power to issue mandamus or other order to compel prosecution since such direction would violate the traditional Separation of Powers Doctrine." Cowan, 524 F.2d at 511. The nominal respondent's failure to grant the motion to dismiss is not an appealable order, so there is no danger that the writ is being used as a substitute for appeal.[20]

Finally, we note that the Court of Appeals for the Third Circuit has rejected efforts to "cabin our discretion to order

---

[19] As noted earlier, the lower court will not even deal with the issue on the merits. *See supra,* n.1. Moreover, this matter has been tabled by the Territorial Court, as demonstrated by responses to this Court's order of November 13th requesting an update on the status of the motion to dismiss.

[20] The suggestion by the dissent that petitioner could have moved to have the nominal respondent issue an order for the Government to show cause why it should not comply with her July 26th Order begs the question, for it assumes that she had the discretion to require the respondent to supply the information sought in the July 26th Order. We have found that the issuance of this Order was an abuse of discretion.

mandamus to situations in which [the lower] court either exceeded its lawful jurisdiction or declined to exercise a nondiscretionary power," observing that "'courts have not confined themselves to any narrow or technical definition of the term "jurisdiction"'" in using the writ to regulate proceedings in the [trial] court. Accordingly, mandamus may issue to correct clear abuses of discretion, to further 'supervisory and instructional goals', and to resolve 'unsettled and important' issues." *Wexler*, 31 F.3d at 128-29 (citations omitted). The record in this case makes it clear that the important issue of the scope of a Territorial Court judge's discretion to withhold leave of court to dismiss a criminal prosecution is unsettled. Moreover, the issuance of mandamus in this case will further the supervisory and instructional goal of resolving this issue.

### CONCLUSION

For all of these reasons, we reluctantly grant the petition for a writ of mandamus and direct Judge Hollar to enter an order dismissing this case with prejudice.[21] A separate order follows.

### DISPOSITION

Petition for a writ of mandamus granted.

### DISSENT

ANDREWS, Territorial Court Judge, dissenting.

The main issue before us is the extent to which the phrase, "by leave of court", in Rule 48(a) limits the prosecutor's previously

---

[21] It would be a meaningless gesture for us to remand for the nominal respondent to rule on the motion now that we have established that the motion to dismiss must be granted. There simply is no discretion for the court to exercise and petitioner is entitled to relief from this criminal prosecution forthwith. This case thus presents one of those "special circumstances . . . dictated by considerations of sound judicial administration, in order to obviate further and entirely unnecessary proceedings below" in which an appellate court should take upon itself to finally dispose of the entire case. *Grosso v. United States*, 390 U.S. 62, 71-72, 19 L. Ed. 2d 906, 88 S. Ct. 709 (1968); *see Yates v. United States*, 354 U.S. 298, 331, 1 L. Ed. 2d 1356, 77 S. Ct. 1064 (1957) (acquittal ordered by Supreme Court because "evidence entirely too meagre to justify putting [defendants] to a new trial . . . ."), *overruled on other grounds by Burks v. United States*, 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141 (1978).

enjoyed absolute power to dismiss an information or complaint. *United States v. Cowan*, 524 F.2d 504, 506 (5th Cir. 1975), *cert. denied*, 425 U.S. 971 (1976). The Supreme Court has stated that the phrase vests some discretion in trial courts when ruling on motions to dismiss, but has yet to delineate the circumstances under which it may be properly exercised. *Rinaldi v. United States*, 434 U.S. 22, 29 n.15, 54 L. Ed. 2d 207, 98 S. Ct. 81 (1977). The Court nevertheless has acknowledged the existence, within the circuits, of the discretion to deny the motion even where the defendant consents. *Id.* (stating that the Rule has been held to permit denial of a motion to dismiss, consented to by the defendant, "if the motion is prompted by considerations clearly contrary to the public interest".) In determining the extent of the court's discretion, the majority relies almost exclusively on decisions of the Fifth Circuit. Other circuits have issued slightly varying decisions and there is no controlling decision on the issue in this jurisdiction or in the Third Circuit. I write separately in light of my disagreement with the majority's interpretation of the law governing Rule 48(a) and their application of the law governing the issuance of mandamus.

In my view, the absence of controlling precedent alone strongly suggests that the petitioner's right to relief is not "clear and indisputable". *Mallard v. United States District Court*, 490 U.S. 296, 309, 104 L. Ed. 2d 318, 109 S. Ct. 1814 (1989); *Will v. Calvert Fire Insurance Company*, 437 U.S. 655, 666, 57 L. Ed. 2d 504, 98 S. Ct. 2552 (1978). Further, it is well established within the circuits, that a trial court has the discretion and duty to deny a motion to dismiss where it is motivated by bad faith or where dismissal is contrary to the public interest. *See United States v. Smith*, 55 F.3d 157, 159 (4th Cir. 1995) (stating that although trial court's discretion when considering motion to dismiss is limited, it may deny it where bad faith or disservice to the public interest is found); *United States v. Hayden*, 860 F.2d 1483, 1487 (9th Cir. 1988) (stating that "Rule 48(a) empowers the district court to exercise its discretion in denying the motion when it specifically determines that the government is operating in bad faith.); *United States v. Welborn*, 849 F.2d 980, 983 n. 2 (5th Cir. 1988) (citing *United States v. Hamm*, 659 F.2d 624, 629 (5th Cir. 1981) (stating that "even when the defendant consents to the motion to dismiss, the trial court, in extremely limited circum-

stances in extraordinary cases, may deny the motion when the prosecutor's actions clearly indicate a 'betrayal of the public interest.'")); *United States v. Strayer,* 846 F.2d 1262, 1265 (10th Cir. 1988) (stating that "the rule is also intended to allow courts to consider public interest, fair administration of criminal justice and preservation of judicial integrity when evaluating motions to dismiss). Clearly then, courts are not a mere "rubber stamp" to a prosecutor's motion to dismiss. *United States v. Ammidown,* 162 U.S. App. D.C. 28, 497 F.2d 615, 622 (D.C. Cir. 1973). In light of the circuits' affirmation of the court's discretionary power, I would find that the nominal respondent possessed the jurisdiction and power to deny the government's motion to dismiss *if she found that it was motivated by bad faith or was contrary to the public interest.*

In determining whether motions to dismiss are motivated by bad faith or is contrary to the public interest, the Tenth Circuit has held that the court "must be informed of the prosecutor's reasons for dismissing the indictment and the factual basis for the prosecutor's decision." *Strayer,* 846 F.2d at 1266. Vague or conclusory reasons will not suffice. *Id.* at 1266. As the District of Columbia Circuit stated:

> . . . the court will not be content with a mere conclusory statement by the prosecutor that dismissal is in the public interest, but will require a statement of reasons and underlying factual basis. . . The rule contemplates exposure of the reasons for dismissal 'in order to prevent abuse of the uncontrolled power of dismissal previously enjoyed by prosecutors,' and in pursuance of this purpose 'to gain the Court's favorable discretion, *it should be satisfied that the reasons advanced for dismissal are substantial.'*

*Ammidown,* 497 at 620 (emphasis supplied). Similarly, the Fifth Circuit has expressed its agreement that "the prosecutor usually should supply more than 'a mere conclusory interest.'" *Hamm,* 659 F.2d at 631 n.23. Additionally, at least one federal court has held that

> Ultimately, it is for the court in either granting or denying leave to file the dismissal, to agree or disagree with the

conclusion of the Attorney General or the United States Attorney that the dismissal is 'in the interest of justice.'"

*United States v. Abreu,* 747 F. Supp. 493, 503 (N.D.Ind. 1990) (citations omitted).

In the case subjudice, the government submitted a factual basis in support of its motion to dismiss. In sum, it asserted that the minor victim had recanted his original statements, that a defense witness verified the "new version", and that consequently the government could not meet its burden. The nominal respondent, having been privy to "contrary factual information", ordered the production of additional factual information. This contrary factual information, I find, was given insufficient attention by the majority. Specifically, the nominal respondent was previously presented with the following information:

1) The petitioner's wife told the police upon arrival at the crime scene, that he had assaulted the minor victim, that the situation with the petitioner is ongoing whenever the petitioner is intoxicated, that the petitioner had assaulted her in the past, had threatened to harm her, and to kill the minor and her if she ever reported him to the police;
2) Immediately after the incident, the minor victim was bleeding from his face, sustained several abrasions to his cheek, neck, and chin, and was treated at the hospital;
3) The minor victim stated that he had a verbal altercation with the petitioner who subsequently punched him in the face; and
4) As a consequence of the alleged threat by the petitioner, the minor victim and the petitioner's wife were housed by victim advocates at a location unknown to the petitioner.

Government's Motion to Dismiss dated 8/2/95, Exhibit No. 4 (Probable Cause Fact Sheet); Nominal Respondent's Order dated 7/26/95, Page 2. In an attempt to carry out her duty to assure that the motion was "not 'contrary to the public interest' and that the motion is made in 'good faith'", the nominal respondent ordered the production of additional supporting material. Nominal Respondent's Order dated July 26, 1995 (Exhibit 3 of Government's

Motion to Dismiss). It was reasonable under these circumstances, pursuant to the court's discretionary power in ruling on motions to dismiss, to require additional information. The nominal respondent clearly was concerned that the victim's new version may have been influenced by the petitioner, in light of the allegation that he had threatened the victim's life in the event he went to the police.[1] What this Court would have done is of no moment, for it is not our function to "actually control the decision of the trial court." *Platt v. Minnesota Mining and Manufacturing Company*, 376 U.S. 240, 245, 11 L. Ed. 2d 674, 84 S. Ct. 769 (1964) (quoting *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 383, 98 L. Ed. 106, 74 S. Ct. 145 (1953)). The initial question is whether, under these circumstances, the nominal respondent's Order can be labeled, a "clear error of law or an abuse of discretion". I think not.

Even if the nominal respondent committed clear error or abused her discretion, this still would not be enough to warrant mandamus. Trial courts have the power to enter erroneous orders.[2] *Will v. United States*, 389 U.S. 90, 98 n.6, 19 L. Ed. 2d 305, 88 S. Ct. 269 (1967). Only where the court's conduct amounts to a judicial usurpation of power such that it acts without its prescribed jurisdiction is mandamus warranted. *See Roche v. Evaporated Milk Association*, 319 U.S. 21, 27, 87 L. Ed. 1185, 63 S. Ct. 938 (1943) (refusing to issue mandamus and stating that "district court has acted within its jurisdiction and has rendered a decision which, even if erroneous, involved no abuse of judicial power); *Commu-*

---

[1] Further, the affidavit submitted by the government failed to explain what the "new version" was. That information although not generally presented with motions to dismiss became significant and necessary *in this case*, since the court was privy to substantial evidence of the petitioner's guilt.

[2] As the Supreme Court warned,

> Neither "jurisdiction" nor "power" can be said to "run the gauntlet of reversible errors." [citations omitted]. Courts faced with petitions for the peremptory writs must be careful lest they suffer themselves to be misled by labels such as "abuse of discretion" and "want of power" into interlocutory review of nonappealable orders on the mere ground that they may be erroneous. "Certainly Congress knew that some interlocutory orders might be erroneous when it chose to make them nonreviewable."

*Will v. United States*, 389 U.S. 90, 98 n.6, 19 L. Ed. 2d 305, 88 S. Ct. 269 (1967) (citing *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 226, 89 L. Ed. 1566, 65 S. Ct. 1130 (1945); *Will v. Calvert Fire Insurance Company*, 437 U.S. 655, 666 n.7, 57 L. Ed. 2d 504, 98 S. Ct. 2552 (1978).

*nication Workers v. American Telephone and Telegraph Company*, 932 F.2d 199, 210 (3d Cir. 1991) (refusing to issue mandamus upon finding that any error by district court did not to rise to usurpation of judicial power). Here, the nominal respondent has not even ruled on the motion to dismiss. Her request for further information was within her prescribed jurisdiction, and did not amount to a usurpation of judicial power.

The writ should be denied here also because other adequate alternative means of relief exists. *Mallard*, 490 U.S. at 309; *United States v. Wexler*, 31 F.3d 117, 128 (3d Cir. 1994), *cert. denied*, 131 L. Ed. 2d 133, 115 S. Ct. 1251 (1995). The petitioner need not engage in piecemeal appellate litigation. He could move the trial court to issue an order to show cause against the government for failure to comply with the nominal respondent's July 26th Order. That failure to comply, incidently, is the real cause for the delay in this matter. Alternatively, the petitioner could himself urge or even assist the government in producing the required information. Upon receipt of the requested information, the Court may decide to grant the motion, thus putting this entire matter to rest. Should the motion be denied, which it has not been, the petitioner may request certification for an interlocutory appeal pursuant to Fed. R. App. P. 5. If granted, he would then obtain review without need to petition us for an extraordinary writ. In the event that permission to appeal is denied, the government may reconsider and decide to prosecute after having evaluated the court's reasons for denial. If the government refuses to prosecute, the petitioner would then have a stronger basis to allege the absence of alternative relief. We do not know what will happen and it is not for us to predict the course of events. What we do know is that several possibilities exist. These should first be explored before invoking this Court's power to issue extraordinary relief. *See Rapp v. Van Dusen*, 350 F.2d 806, 813 (3d Cir. 1965) (stating that "petitions for the writ should allege that an unsuccessful request was made for certification under § 1292(b) [i.e., Fed. R. App. P. 5], or why such an application was inappropriate in the circumstances".) The petition is thus premature.

We must remain ever cognizant of the fact that the remedy of mandamus against a judge is a drastic and extraordinary one. It's

use is discouraged because it has the unfortunate consequence of making the judge a litigant and results in piecemeal appellate litigation. *Mallard*, 490 U.S. at 309; *Ex Parte Fahey*, 332 U.S. 258, 259, 91 L. Ed. 2041, 67 S. Ct. 1558 (1947). As such the remedy is "reserved for *really* extraordinary causes". *Ex Parte Fahey*, 332 U.S. at 259 (emphasis supplied). In this case: 1) there is no controlling decision on the key issue in this jurisdiction; 2) courts have the jurisdiction and power to deny motions to dismiss where it is not made in good faith or is contrary to public interest; 3) there exists sufficient cause for concern that the motion may be contrary to the public interest; 4) The nominal respondent has yet to rule on the motion; and 5) adequate means of alternative adequate relief exists. For these reasons, I conclude that the petitioner has not met his burden of establishing that his right to relief is clear and indisputable, and would deny the writ. Accordingly, I respectfully dissent.

Dated this 13th day of June, 1996.

### ORDER OF THE COURT

AND NOW, this 13th day of June, 1996, having considered the submissions of the parties; and for the reasons set forth in the Court's accompanying Memorandum of even date;

IT IS ORDERED AND ADJUDGED that Kim Dawsey's petition for writ of mandamus is GRANTED and the matter is REMANDED to the Territorial Court with directions to enter an order dismissing this prosecution with prejudice.