# IN RE: SAMUEL MOSES

D.C. Civ. App. No. 2006/068
District Court of the Virgin Islands
Division of St. Thomas and St. John
August 29, 2006

DAVID J. COMEAUX, ESQ., St. Thomas, U.S.V.I., *For Petitioner.*

VERNE A. HODGE, JR., ESQ., St. Thomas, U.S.V.I., *For Nominal Respondent.*

FINCH, *Chief Judge of the District Court of the Virgin Islands*; GOMEZ, *Judge of the District Court of the Virgin Islands*; and STEELE, *Judge of the Superior Court of the Virgin Islands, Division of St. Croix, sitting by designation.*

## MEMORANDUM OPINION

### (August 29, 2006)

Petitioner Samuel Moses requests that this Court enter an order directing the Superior Court[1] to dismiss the criminal charges against him for want of prosecution or for unconstitutional delay. He was charged by information on August 15, 2000, and has yet to be tried on the charges.

This same panel heard this matter[2] last fall on September 23, 2005, but the panel declined to issue the writ at that time.

## I. FACTUAL BACKGROUND AND OVERVIEW

On August 15, 2000, the Government of the Virgin Islands filed an information in the Superior Court of the Virgin Islands, charging petitioner Samuel Moses with two counts of first degree rape, in violation of title 14, section 1701 of the Virgin Islands Code, and one count of aggravated assault and battery, in violation of title 14, section 298(5) of the Virgin Islands Code. Moses has yet to be tried on these charges. Moses argues in his petition for writ of mandamus that since the government filed its information over six years ago, neither the Superior Court nor the government has adequately guided this matter toward resolution. In particular, the factual predicate of Moses' petition is that the Superior Court has been dilatory in ruling on several of his motions and otherwise forcing this matter to trial.

While the case has been pending, Moses has been restricted from leaving the Virgin Islands. Because of this, he has had to postpone his education and forego a specific higher-paying job. For the last six years, his work schedule has been limited because he must check in with probation multiple times per week.[3] Moses also notes that his anxiety and

---

[1] At all times relevant to this appeal, the trial court was known as the Territorial Court of the Virgin Islands and its judges were referred to as Territorial Court Judges. Effective January 1, 2005, however, the name of the Territorial Court changed to the Superior Court of the Virgin Islands. *See* Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004). Recognizing this renaming, we employ the terms Superior Court and Superior Court Judge.

[2] The petitioner filed a new petition for writ of mandamus, thus it has a new file number though the issues remain identical. The previous petition is listed as Civil Number 2004-94.

[3] For the first four years after his arrest, until August 14, 2004, he was forced to check in with probation every day. He made a motion to modify this condition of release in

"stress [are] physically manifested and evidenced by the fact that he has lost fifty pounds since his arrest." [Pet. for Writ of Mandamus in Civil No. 2004-94 (hereinafter "Original Pet."), Ex. A at 9.]

Moses complains that he has filed at least ten motions seeking dismissal, suppression, and the like, and that none of them have been resolved. He states that the Government has failed to respond to most of the motions as well.

Neither the nominal respondent nor the respondent have filed responses, though this Court ordered any responses to be filed by June 12, 2006. On June 5, 2006, Moses filed a Notice of Incorrect Caption stating that the case was no longer before Judge Swan and had been transferred to Judge Kendall. On June 16, 2006, Judge Kendall filed an affidavit with the Court indicating that the case had been transferred to him around September 2005. In the affidavit, he states that

> Inasmuch as Affiant was not a party to the original Petition, Affiant had no knowledge of either its existence or the Court's Opinion of December 16, 2005 prior to receiving the 'Notice to Correct Caption.' Based on the averments ... above, it is clear that any duty owed to Petitioner to rule on the Motions is owed him by Judge Swan and not Affiant. ... For all of the foregoing reasons, Affiant entered an Order dated June 12, 2006 recusing himself from Criminal No. F328/2000.

Kendall Aff. at 2 (June 16, 2006).

In response to the original petition, Judge Swan filed a Notice of Special Appearance and Motion to Dismiss Petition in response to Moses' petition. In summary, the response stated that all but the then recently-filed motions have been resolved through his rulings from the bench. The trial judge also stated that the delay in bringing the matter to trial is not the result of his inaction but, instead, is due to "the fact that only recently were the serological and scientific evidence submitted to the [FBI] for testing, including the results of a rape kit." [Mem. in Support of Respt.'s Mot. to Dismiss at 3; hereinafter "Resp't Mem."] It appears that the evidence was submitted to the FBI lab on July 21, 2004.

---

August 2001 and again in May 2003 but it was not granted until August 2004. The modification required that he check in twice per week.

We have reviewed the trial docket submitted by the Superior Court in an attempt to ascertain what actually happened below. Unfortunately, the Superior Court trial docket is singularly unhelpful as it is inaccurate. For example, the docket lists only one entry between January 24, 2005, and June 1, 2005, but Moses has provided copies of two motions filed and date stamped by the Superior Court as well as three orders issued during that time signed by the trial judge. Given these limitations, we have attempted to create a chart indicating what may have happened.

### Table: List of Disputed Motions Filed by Defendant

| Date Motion Was Filed: | Title of Motion: | Status of Motion: | If resolved, date and result of disposition: |
|---|---|---|---|
| 10/05/00 | Motion For Production of 911 Tapes and Central Dispatch Logs | Pending | N/A |
| 08/08/01 | Motion to Modify Conditions of Release | Resolved | Orally denied on 09/30/02. |
| 08/08/01 | Motion to Dismiss or in the alternative Suppress Evidence As Discovery Sanction | Resolved | Orally denied motion to dismiss on 09/30/02; then defendant's counsel said all discovery issues had been addressed. |
| 10/31/01 | Motion to Deem Motion to Dismiss Conceded | Resolved | Orally denied on 09/30/02. |
| 03/06/03 | Renewed Motion to Dismiss, or in Alternative, to Suppress Evidence | Pending | N/A |
| 05/13/03 | Motion to Modify Conditions of Release | Moot | Granted similar motion on 08/14/04. |
| 06/22/04 | Motion to Dismiss for Unconstitutional Delay and for Want of Prosecution | Pending | N/A |
| 06/30/04 | Emergency Motion to Quash Search Warrant | Resolved | Denied 08/27/04. |

| Date Motion Was Filed: | Title of Motion: | Status of Motion: | If resolved, date and result of disposition: |
|---|---|---|---|
| 07/02/04 | Motion for Hearing On Emergency Motion to Quash Search Warrant, or in the Alternative Suppress Evidence | Pending | Granted motion for hearing on 08/09/04. Denied Motion to quash in 08/27/04 order. Did not address alternative motion. |
| 08/13/04 | Unopposed Motion to Modify Conditions of Release | Resolved | Granted in 08/14/04 order. |
| 06/03/05 | Renewed Motion to Dismiss | Pending | N/A |

Aside from the information summarized above, we also note that trial in this matter has been delayed on several occasions. It seems that the original trial date was set for August 9, 2004,[4] but on July 30, 2004, the Government sought a continuance of the trial date because the FBI laboratory analysis of Moses' bodily samples was not yet unavailable. The trial court set a new trial date of October 25, 2004, but because the FBI laboratory results were still not available, the trial was rescheduled for July 25, 2005. Although the docket from the Superior Court does not indicate, we discovered that once again the trial was postponed and no new trial date was set. It is unclear whether the case has been reassigned to a new judge now that Judge Kendall has recused.

In sum, it seems that at least three of the Petitioner's motions have not been addressed at all, including the June 22, 2004, Motion to Dismiss for Unconstitutional Delay and for Want of Prosecution.

This Court's opinion dated December 16, 2005, stated the following:

Moses' case may be ripe for a writ to issue. However, given the absence of a clear record in this case, we decline to issue a writ at this time. While we remain concerned that Moses' case still remains pending after five years, we expect the Superior Court to resolve the issue shortly. Thus, the denial of mandamus relief is without prejudice to a renewed application if the Superior Court

---

[4] There is nothing on the record to indicate why it took so long to set a trial date.

does not rule on the pending motions regarding Moses' speedy trial and due process rights within sixty days of the date of this order.

Mem. Opinion at 10 (D.V.I. App. Div. Dec. 16, 2005) (slip op.). Other than the recusal of Judge Kendall, it appears nothing has happened in this case in the Superior Court since this panel first considered the matter in September, 2005. On April 24, 2006, Moses renewed his petition for writ of mandamus by filing a new petition.

## II. JURISDICTION

As a court with potential appellate jurisdiction over the underlying matter pending before the Superior Court, this Court has authority to consider and determine petitions for writs of mandamus to the judges of the Superior Court. *See In re Richards*, 213 F.3d 773, 780, 42 V.I. 469 (3d Cir. 2000); *see also Dawsey v. Government of the V.I.*, 931 F. Supp. 397, 400-01, 34 V.I. 174 (D.V.I. App. Div. 1996) *aff'd*, 106 F.3d 384 (3d Cir. 1996).

## III. ANALYSIS

### A. Writ of Mandamus Standard

It is well recognized that a writ of mandamus is an extraordinary remedy, only to be issued in "exceptional circumstances amounting to a judicial 'usurpation of power.'" *Citibank, N.A. v. Fullam*, 580 F.2d 82, 86 (3d Cir. 1978) (quoting *Will v. United States*, 389 U.S. 90, 95, 88 S. Ct. 269, 19 L. Ed. 2d 305 (1967)). For a writ of mandamus to be issued, the petitioner must show "no other adequate means to attain the desired relief, and ... a right to the writ [that] is clear and indisputable." *In re Patenaude*, 210 F.3d 135, 141 (3d Cir. 2000).

### 1. Lack of Other Adequate Means for Relief

Moses has no other adequate means to get relief because the Superior Court judges and the government may continue to ignore Moses' motions in the absence of any action from this Court. Moses has already filed multiple motions to dismiss for unconstitutional delay but after more than a year, the trial court has yet to acknowledge them. Moses is unable to appeal decisions before they are made.

## 2. Clear and Indisputable Right to Relief

Moses asserts two bases for a clear and indisputable right to relief. First, Moses argues the alleged inactivity of the trial court has infringed upon his Sixth Amendment right to a speedy trial. Second, Moses seeks relief under Federal Rule of Criminal Procedure 48(b)(3). First, we address his speedy trial claim, which incorporates the due process claim in the discussion of prejudice to the defendant. Then, we address his Rule 48(b)(3) motion.

### a. Sixth Amendment

Moses is correct that the Sixth Amendment guarantees a right to a speedy trial.[5] *Barker v. Wingo*, 407 U.S. 514, 515, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *see also Gov't of the V.I. v. Pemberton*, 813 F.2d 626 (3d Cir. 1987). However, "[n]o per se test has been devised to determine when the right to a speedy trial has been violated." *United States v. Williams*, 782 F.2d 1462, 1465 (9th Cir. 1985). Instead, in weighing any speedy trial claim, the following four factors are considered: (1) length of delay; (2) reason for delay; (3) defendant's assertion of his right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530-31; *United States v. Dreyer*, 533 F.2d 112, 114-15 (3d Cir. 1976). In this balancing test, no one factor is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker*, 407 U.S. at 533.

### i. Length of Delay

When the length of delay has been presumptively prejudicial, the court should make an inquiry into the other factors. As the post-accusation delay before trial nears one year, lower courts find it presumptively prejudicial. *Doggett v. United States*, 505 U.S. 647, 652 n.1, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992) There is no question that the delay in bringing Moses to trial has been substantial as it has been six years since he was arrested and he has still not been brought to trial. *Cf. Dreyer*, 533 F.2d at 117 (finding violation of speedy trial guarantee in twenty-nine month delay between indictment and trial).

---

[5] The Sixth Amendment right to a speedy trial applies in the Virgin Islands per section 3 of the Revised Organic Act, 48 U.S.C. § 1561. *See, e.g., Government of Virgin Islands v. King*, 25 V.I. 114, 117 (Terr. Ct. 1990).

## ii. Reason for Delay

■■ The reason for the delay is the second factor. In evaluating this factor, the Court should ask "[i]n the face of petitioner's repeated demands, did the [Territory] discharge its 'constitutional duty to make a diligent, good-faith effort to bring him (to trial)'?" *Moore v. Arizona*, 414 U.S. 25, 26, 94 S. Ct. 188, 38 L. Ed. 2d 183 (1973) (citing *Smith v. Hooey*, 393 U.S. 374, 383, 89 S. Ct. 575, 21 L. Ed. 2d 607 (1969)). Clearly, different reasons for delay will be weighted differently:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

*Barker*, 407 U.S. at 531.

The reasons for delay in Moses' trial are not entirely clear. The trial date has been postponed on multiple occasions. It seems that the original trial date was set for August 9, 2004, though there is nothing on the record to indicate why it took so long to set a trial date. (Notice of Updated SUPER. CT. R. at 4.) On July 30, 2004, the Government sought a continuance of the trial date "because the FBI laboratory analysis of Mr. Moses' bodily samples was still unavailable." (*Id.*) The trial court set a new trial date of October 25, 2004, but because the FBI laboratory results were still not available, the trial was postponed again.

The trial judge contends that the cause of delay in trial in 2004 was because the serological and scientific evidence had only recently been submitted to the FBI as of August 6, 2004, the date of his response. It appears that the evidence was submitted to the FBI lab on July 21, 2004. (Notice of Updated SUPER. CT. R. at 4.)

The government, in its Response to Defendant's Motion to Dismiss, dated July 5, 2005, argues the delay in trial has been due to the case being assigned to three different judges. It also argues the defendant is at fault in the delay in completing the FBI analysis. The government contends that the search warrant was filed in August, 2000, but not executed until August, 2004, because of the attempts by Moses to quash the warrant. We were unable to verify this as we could not find any

reference to a search warrant petition or filing in the docket. However, we did. locate Moses' Opposition to Petition for Issuance of Search Warrant, which is dated March 15, 2001. Thus, it seems possible that some of the dates in the government's motion are inaccurate because if the government actually filed its petition in August, 2000, it would seem unlikely for Moses to take until March, 2001, to file his opposition. Additionally, it is unclear how evidence was submitted to the FBI in July, 2004, if the warrant was not executed until August, 2004.

It seems that the majority of the delay in getting a trial date was related to waiting for the FBI lab results, which was in turn related to the delay in sending the evidence. As explained above, it is unclear what the cause of this delay was. While *Barker* acknowledges that negligence is a more neutral reason for delay, it seems that this situation may be closer to an outright abandonment of prosecuting the case for weeks or months at a time.

One postponement of trial seemed to be for a neutral reason. On May 24, 2005, the new trial date was set for July 25, 2005. It was postponed when Judge Swan transferred to the family division and the case was transferred to a fourth judge, Judge Kendall, who recently recused. As of June 30, 2006, Moses' case does not have a trial date set.

With regard to the failure to make rulings on motions, the trial judge's original response argues that the only pending motions are those recently filed. However, even if that were true when the response was filed in August 2004, one of the motions the trial judge admitted had not been ruled on by August 2004 has still not been ruled on since then—the Motion to Dismiss for Unconstitutional Delay, filed June 22, 2004. The Superior Court has now had this motion to dismiss pending for two years and no ruling has been issued. Since the June 22, 2004 filing, Moses has filed more motions that have not been addressed by the court. It seems that the government has not filed a response to Moses' motion to dismiss, which may in turn have contributed to the court's reluctance to issue a ruling, but that does not excuse the unreasonable delay.

### iii. Defendant's Assertion of his Right

■ Whether the defendant has asserted his right to a speedy trial is the third and most important factor. *Barker*, 407 U.S. 534-35. From the beginning of this ordeal, Moses requested a speedy trial. When it became apparent that the trial would not happen quickly, Moses filed motion

488

after motion asserting his right to a speedy trial. As explained above, the government has not responded to some of these and the court has not ruled on all of them either. In particular Moses' Motion to Dismiss for Unconstitutional Delay and for Want of Prosecution in June 2004 has been left unanswered. Moses filed petitions for writs of mandamus with this Court as well, asking this Court to direct the trial court to rule on his motions. Clearly, Moses has made a strong effort to assert his right to a speedy trial.

### iv. Prejudice to the Defendant

The final factor is prejudice to the defendant. The Supreme Court has recognized that prejudice to the defendant is not limited to an impairment to the defense. *Moore v. Arizona*, 414 U.S. at 26-27; *Barker*, 407 U.S. at 532-33 (noting incarceration can cause unemployment, idleness, and disruption to family life in addition to restraints on liberty while living under a "cloud of anxiety, suspicion and often hostility"); *see also Dreyer*, 533 F.2d at 115. The Third Circuit has determined that prejudice can also include any threat to a defendant's "psychological, physical, and financial [interests] in the prompt termination of a proceeding which may ultimately deprive him of life, liberty, or property." *Dreyer*, 533 F.2d at 115 (holding that severe anxiety and depression that contributed to a suicide attempt by the defendant was clearly enough prejudice to the defendant to warrant vacating a sentence and dismissing the indictment).

In contrast to the situation in *Dreyer*, in *Government of the Virgin Islands v. Pemberton*, the Third Circuit held the defendant was not prejudiced enough to warrant a dismissal when it took sixteen months to go to trial. 813 F.2d 626 (1987). Pemberton argued that though he had not been detained since the first day of his arrest, he was not free to leave the territory. The Third Circuit noted that Pemberton never put on the record any need to leave the territory. *Id.* at 629. Pemberton also apparently never made any inquiry into the status of the case. *Id.* at 630.

Compared to Pemberton, Moses was also restricted from leaving the Virgin Islands, but he has provided the Superior Court with multiple needs to leave the territory. He had planned to attend school in Atlanta in 2003 and later had to forego a specific higher-paying job in Virginia. Having to check in with probation multiple times per week for the last

six years has also limited his work schedule.[6] Additionally, he alleges his son was abducted by his mother in February, 2003, and Moses' movement restrictions prevented him from looking for him.

In addition to the restrictions on his movement causing him psychological, financial, and personal prejudice, Moses claims the delay in trial alone has also brought similar prejudice. Moses has had two children since his arrest and plans to marry their mother but feels it would not be proper to marry until this matter is resolved. He notes that his anxiety and stress were physically manifested and evidenced by his large weight fluctuations since the arrest.

▉ Moses' psychological, financial, and personal prejudice seems more factually similar to Dreyer's than Pemberton's. Moses asserted his right, has been prejudiced, and it has been more than six years since his arrest with no apparent good reason for the delay. The government has not met its constitutional duty to make a diligent, good-faith effort to bring him to trial. On balance, these factors favor the defendant. Moses has a clear and indisputable right to relief as well as a lack of other adequate means for relief.

### b. Rule 48(b)(3)

Even if we found Moses' constitutional claims not strong enough to warrant a dismissal, Moses also has a clear and indisputable right to relief through Federal Rule of Criminal Procedure 48(b)(3). Rule 48(b)(3) states "[t]he court may dismiss an indictment, information, or complaint if unnecessary delay occurs in bringing a defendant to trial."[7]

▉ Compared to the constitutional speedy trial claim, it is easier for Moses to show a clear and indisputable right to relief under his Rule 48 claim because the "rule imposes a stricter standard of tolerable delay than does the sixth amendment." *United States v. Zabady*, 546 F. Supp.

---

[6] For the first four years after his arrest, until August 14, 2004, he was forced to check in with probation every day. He made a motion to modify this condition of release in August 2001 and again in May 2003 but it was not granted until August 2004. Now he still must check in on a regular basis.

[7] The Rules of the Superior Court provide that practice in that court "shall be governed by the Rules of the [Superior] Court and, to the extent not inconsistent therewith, by the ... Federal Rules of Criminal Procedure. ..." SUPER. CT. R. 7. As there is no Superior Court rule governing the dismissal of a case for unnecessary delay, Rule 48(a) of the Federal Rules of Criminal Procedure governs here.

35, 38 (M.D. Pa. 1982); *see also United States v. Watkins*, 339 F.3d 167, 180 (3d Cir. 2003) (Nygaard, J., concurring). Courts may use the same factors set forth in *Barker* for determining whether to exercise the discretionary power to dismiss under Rule 48(b)(3). *See, e.g., Zabady*, 546 F. Supp. at 38 (citing *United States v. Judge*, 425 F. Supp. 499, 503 (D. Mass. 1976) and *United States v. Dowl*, 394 F. Supp. 1250, 1256 (D. Minn. 1975)). A Rule 48(b)(3) dismissal can be with or without prejudice. *See, e.g., United States v. Goodson*, 204 F.3d 508, 515 (4th Cir. 2000); *Zabady*, 546 F. Supp. at 38.

As discussed above, the *Barker* factors lean in the defendant's favor enough to warrant granting a dismissal on constitutional grounds.

## IV. CONCLUSION

The unnecessary delay in this case was caused by both the trial judges and the prosecutors. The government has done little to resolve this matter. Moses' case has been transferred from one judge to another and it seems none of the Superior Court judges assigned to it thus far have any interest in advancing the case towards a trial or ruling on pending motions. There is no indication that a trial date will be set anytime in the near future. The Superior Court judges have had ample time to rule on the pending motions, and this Court noted last December that the case may be ripe for a writ to issue. Even after the December 16, 2005, opinion in which this Court noted "we expect the Superior Court to resolve this issue shortly," no trial judge has ruled on Moses' motions.

Under these circumstances, it is appropriate to grant Moses' writ of mandamus. Accordingly, we will issue a writ directing the Superior Court to dismiss Moses' case with prejudice.