**IN RE GOVERNMENT OF THE VIRGIN ISLANDS, Petitioner,
Concerning ALVOURNE WILLIAMS, Respondent, and
HON. LEON A. KENDALL, Nominal Respondent**

D.C. Civil App. No. 2004-69

District Court of the Virgin Islands

Division of St. Thomas

February 24, 2006

635

MAUREEN PHELAN, A.A.G., St. Thomas, U.S.V.I., *For petitioner Government of the Virgin Islands.*

JESSE BETHEL, T.P.D., St. Thomas, U.S.V.I., *For respondent Alvourne Williams.*

VERNE A. HODGE, JR., ESQ., St. Thomas, U.S.V.I., *For nominal respondent Hon. Leon A. Kendall.*

FINCH, *Chief Judge of the District Court of the Virgin Islands*; GOMEZ, *Judge of the District Court of the Virgin Islands*; and STEELE, *Judge of the Superior Court, Division of St. Croix, sitting by designation.*

## MEMORANDUM OPINION

(February 24, 2006)

The government has filed a petition for a writ of mandamus directing the trial judge to enter an order dismissing charges it filed against Alvourne Williams. In the underlying matter, the trial judge interpreted Rule 48(a) of the Federal Rules of Criminal Procedure as providing him with the authority to deny the prosecution's request to dismiss a criminal complaint, if he felt that dismissing the complaint would conflict with the public interest. For the reasons explained below, we will grant the government's petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This matter arises from a criminal proceeding in the Superior Court of the Virgin Islands.[1] On January 13, 2004, Virgin Islands police officers were dispatched to a private residence on Haabets Gade to respond to a complaint of disturbance of the peace. [Petr.'s Br. at 2.] When they arrived at the scene of the disturbance, they encountered Alvourne Williams behaving in a loud, boisterous manner and using obscene language. [*Id.*] The officer's presence apparently did little to subdue Williams as a physical struggle ensued. It is unclear from the police report who instigated the altercation. [*Id., Ex. D.*] The officers were able to restrain Williams and take him into custody. [*Id., Ex. D.*] As a result of the incident, Williams was arrested and charged with two counts of disturbing the peace in violation of 14 V.I. CODE ANN. tit. 14, § 622, delaying and obstructing an officer discharging his duty in violation of 14 V.I.C. § 1508, and resisting arrest in violation of 14 V.I.C. § 1508. [*Id., Ex. C.*] The case was set for trial to begin on May 21, 2004.

On April 29, 2004, the government filed a motion to dismiss all charges, stating in its motion that Williams had apologized to the police officers involved. [*Id., Ex. A.*] The government claims in its petition for a writ of mandamus that the arresting officers contacted the prosecutor assigned to the case and stated that they no longer wished to proceed. [*Id.* at 2.] The officers informed the prosecutor that Williams had apologized for his disruptive behavior and that they felt the situation had been rectified. [*Id.* at 2.] The prosecutor then conferred with the head of the Criminal Division of the Virgin Islands Department of Justice, and the Department of Justice decided to file the aforementioned motion to dismiss. [*Id.* at 2.].

The trial judge assigned to Williams' case did not rule on the motion before the trial date. [*Id.* at 2.] The parties appeared in Superior Court on May 21, 2004, the date previously scheduled for trial. [*Id.* at 2.] The trial judge opened the proceedings by requesting argument from the government's attorney in support of the motion to dismiss. [Petr.'s Br.,

---

[1] At all times relevant to this petition, the lower court was known as the Territorial Court of the Virgin Islands and its judges were referred to as Territorial Court Judges. Effective January 1, 2005, however, the name of the Territorial Court changed to Superior Court of the Virgin Islands. *See* Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004). Recognizing this renaming, we employ the terms Superior Court and Superior Court Judge.

Ex. E at 2.; hereinafter "Hr'g Tr."] The government argued briefly that it no longer wished to go forward with the charges because it was satisfied with Williams' apology. [Hr'g Tr. at 2.] The trial judge then responded that he did not consider the petitioner's apology to be a sufficient reason to dismiss the matter because "that apology basically goes to mitigation of punishment and not to the basis for dismissing the action." [*Id.* at 2-3.] The trial judge went on to state:

> The Court is mindful of the Third Circuit's decision in the case of *In re Richards,* but the Court feels that the basis posited by the Government for dismissal of this action is contrary to the public's interest. The Court notes that the reason is insufficient, that the mere apology to the police officers involved is not a sufficient basis for dismissing this action, and the Court will cite pertinent portions of the Third Circuit decision in *In re Richards,* specifically with respect to this Court's role in action on such motions to dismiss.

[Hr'g Tr. at 3-4.] The trial judge opined that per *In re Richards,* Rule 48 of the Federal Rules of Criminal Procedure granted him substantial power to force the government to prosecute a case when he felt it would be in the public's best interest. [Hr'g Tr. at 4-5.]

The trial judge closed the proceedings by stating he was "not persuaded that the reasons set forth by the Government for dismissal of this action is in the public interest" and, therefore, he would deny the motion to dismiss. [*Id.* at 6.] In the judge's written order, he further explained that he believed that dismissal would not "protect the public's interest in the evenhanded administration of justice" because the defendant's mother is a police sergeant. [Nominal Respt.'s Resp., Ex. 1, at 2.]

On June 23, 2004, the government petitioned this Court for a writ of mandamus directing the Superior Court to enter an order dismissing the underlying matter. Williams, the respondent, has not filed any brief regarding the government's petition.

The nominal respondent recently filed an opposition brief to the government's petition. In it, he argues that the writ should be denied because the government has an alternative adequate means of relief: it could have petitioned the Presiding Judge under Superior Court Rule 14. Further, the nominal respondent argues that the government was required to show in its Rule 48(a) dismissal motion that the dismissal was in the

public interest. [Nominal Respt.'s Resp. at 3 (citing *In re Richards*, 213 F.3d 773, 42 V.I. 469 (3rd Cir. 2000) and *United States v. Ammidown*, 162 U.S. App. D.C. 28, 497 F.2d 615 (D.C. Cir. 1974)).]

## II. JURISDICTION

As a court with potential appellate jurisdiction over the underlying matter pending before the Superior Court, this Court has authority to consider and determine petitions for writs of mandamus to the judges of the Superior Court. *See* The Omnibus Justice Act of 2005, Act No. 6730, § 54 (amending Act No. 6687 (2004), which repealed V.I.C. §§ 33-40, and reinstating appellate jurisdiction in this Court); *see also In re Richards*, 213 F.3d 773, 780, 42 V.I. 469 (3d Cir. 2000).

## III. ANALYSIS

Whether judges of the Superior Court have the power to force the executive branch of the Government of the Virgin Islands to prosecute charges it previously filed, even when the executive branch exercised its discretion not to proceed with the prosecution, is not a question of first impression for this Court. Instead, this Court has on many previous occasions explained that trial judges lack such authority to force the government's hand. *See Government of V.I. v. Thomas*, 341 F. Supp. 2d 531 (D.V.I. App. Div. 2004); *In re Richards*, 52 F. Supp. 2d 522, 40 V.I. 161 (D.V.I. App. Div. 1999), *aff'd in part and rev'd in part*, 213 F.3d 773, 42 V.I. 469 (3d Cir. 2000); *Dawsey v. Gov't of the V.I.*, 931 F. Supp. 397, 397, 34 V.I. 174 (D.V.I. App. Div. 1996), *aff'd,* 106 F.3d 384 (3d Cir. 1996). Now this Court must determine to what extent, if any, *In re Richards* permits a trial judge to deny a prosecutor's motion to dismiss when the trial judge deems the reason given too "conclusory."

### A. *Nolle Prosequi* and Separation of Powers

■ Before turning to an analysis of Rule 48 of the Federal Rules of Criminal Procedure, as interpreted by the Third Circuit in *In re Richards,* it is important to review the common law doctrine of *nolle prosequi* and note the importance of separation of powers in the governmental structure of the Virgin Islands. As this Court has previously recognized, at common law, the prosecutor had unbridled discretion to dismiss a criminal prosecution without any interference from the court. *Dawsey*, 931 F. Supp. at 401.

■ This *nolle prosequi* power is part of a set of prosecutorial powers traditionally vested in the executive branch. In the Virgin Islands, the prosecutorial power is located solely in a department of the executive branch known as the Department of Justice and headed by the Attorney General. *See* 3 V.I.C. §§ 111, 112(a) (2005). Courts in the Virgin Islands "have long recognized that, based on the constitutional doctrine of separation of powers, 'the Attorney general has been given the mantle of broad discretion and *exclusive* control over the misdemeanor prosecutorial function.'" *Dawsey*, 931 F. Supp. at 401 (quoting *Tonkin v. Michael*, 349 F. Supp. 78, 9 V.I. 172 (D.V.I. 1972)).

## B. Rule 48(a), as interpreted by the Third Circuit Court of Appeals in *In re Richards*

The Rules of the Superior Court provide that practice in that court "shall be governed by the Rules of the [Superior] Court and, to the extent not inconsistent therewith, by the ... Federal Rules of Criminal Procedure. ..." SUPER. CT. R. 7. As there is no valid Superior Court rule governing the government's authority to dismiss charges it brought against a defendant,[2] Rule 48(a) of the Federal Rules of Criminal Procedure governs whether the trial judge could deny the Virgin Islands Department of Justice's motion to dismiss its prosecution of the underlying matter. That rule states as follows:

> The government may, with leave of court, dismiss an indictment, information, or complaint. The government may not dismiss the prosecution during trial without the defendant's consent.

FED. R. CRIM. P. 48(a).

■ Because it was promulgated under the Rules Enabling Act, Rule 48(a) is a procedural rule rather than a substantive one. *In re Richards*, 213 F.3d at 785. In *In re Richards,* the Court of Appeals observed that one suggested rationale for the "leave of court" clause of Rule 48(a) is

---

[2] Superior Court Rule 128(b) would purport to prevent dismissal of criminal charges, unless the Superior Court has determined that such a dismissal "is in good faith, in the public interest, and in the interest of justice." This Court, however, has held that Rule 128(b) is invalid, as the Superior Court lacks authority to create such substantive rules of law. *In re Richards*, 52 F. Supp. 2d 522, 528, 40 V.I. 161 (D.V.I. App. Div. 1999). On appeal, the Third Circuit Court of Appeals confirmed that Rule 128(b) is an invalid substantive rule and is therefore void. *In re Richards*, 213 F. 3d 773, 784, 42 V.I. 469 (3d Cir. 2000).

that it allows trial judges to prevent prosecutorial harassment of defendants by the government. *Id.* at 786 (citing *Rinaldi v. United States*, 434 U.S. 22, 29 n.15, 98 S. Ct. 81, 54 L. Ed. 2d 207 (1977)). The Court of Appeals went on to explain:

> The concern of prosecutorial harassment speaks to the danger that a prosecutor will engage in a cycle of levying and dismissing charges against a particular defendant. *The other concerns are harder to describe.* Courts have equated a dismissal that is clearly contrary to the public interest with one in which the prosecutor appears motivated by bribery, animus towards the victim, or a desire to attend a social event rather than trial.

*In re Richards*, 213 F.3d at 787 (emphasis added).

The *In re Richards* panel, however, never specifically endorsed or adopted the "hard to describe" concerns of other courts regarding dismissals that are "clearly contrary to the public interest." As the trial judge quoted from the bench, a portion of the *In re Richards* decision did indeed repeat the following words: "Rule 48(a) ... permits courts faced with dismissal motions to consider the public interest in the fair administration of criminal justice and the need to preserve the integrity of the courts." 213 F.3d at 786-87. Left out of the trial judge's recitation of these words from the bench, however, was any mention that these words did <u>not</u> represent the holding of *In re Richards*. Indeed, these words were lifted from a portion of *In re Richards* that merely quotes another court's summary of yet another court's interpretation of *Rule 48*. *Id.* (quoting *United States v. Carrigan*, 778 F.2d 1454, 1463 (10th Cir. 1985*)*, which internally quotes *United States v. Hamm*, 659 F.2d 624, 628-29 (5th Cir. 1981)).[3]

---

[3] The statement quoted for overview purposes only in the *In re Richards* decision and repeated by the trial judge from the bench is from *United States v. Hamm,* a case out of the Fifth Circuit. Significantly, *Hamm* gives an extremely narrow interpretation of the "public interest." 659 F.2d 624, 628-630 (5th Cir. 1981). In *Hamm,* the Fifth Circuit Court of Appeals provided the following holding:

> We hold that the "leave of the court" requirement of Rule 48(a) is primarily intended to protect the defendant against prosecutorial harassment. The district court may not deny a government motion to dismiss a prosecution, consented to by the defendant, except in those <u>extraordinary cases</u> where it appears the prosecutor is motivated by considerations clearly contrary to the manifest public interest.

The Court of Appeals' holding in *In re Richards* was much more limited than the trial judge's reading of it. The Court of Appeals was presented with the narrow question of "whether [a trial judge's] power under [Rule 48(a)] was so circumscribed as to prohibit his conducting a hearing on the circumstances surrounding the Government's requested dismissal." 213 F.3d at 787. Interpreting Rule 48(a) as a rule of procedure rather than substance, the Court of Appeals held that it authorized a trial judge to hold such a hearing. *Id.*

Because no such hearing had been held in *In re Richards,* the scope of the trial judge's authority to require further reasons from the executive for its dismissal of pending criminal charges was not before the Court of Appeals and remains unclear. In particular, the Court of Appeals was not called upon to and did not determine the extent to which the trial judge may use a Rule 48(a) hearing to question the government's motivations for dismissing an action. The Third Circuit Court of Appeals clearly did not hold that Rule 48(a) might allow a trial judge to deny a prosecutor's motion to dismiss previously filed charges if the trial judge feels that doing so would be contrary to the public interest.

We are aware that some courts, including the *In re Richards* panel, have speculated that a trial judge's denial on public interest grounds of a prosecutor's motion to dismiss might not violate the separation of powers between the judiciary and the executive. However, we are unaware of any court that has upheld a denial of a prosecutor's motion to dismiss a charge for the reasons found by the trial judge here. Indeed, the Seventh Circuit Court of Appeals noted it was "not surprising" that no appellate court has actually approved such judicial oversight. *In re United States,* 345 F.3d 450, 453 (7th Cir. 2003). The Seventh Circuit panel provided the following eloquent explanation for why such judicial "public interest review" of prosecutorial judgment does not exist in practice:

> The Constitution's "take Care" clause (art. II, § 3) places the power to prosecute in the executive branch, just as Article I places the

---

*Id.* at 628 (emphasis added). Although the *Hamm* court did not define "manifest public interest," the examples cited in the opinion confirm the very restricted scope of betrayal of the public interest that can justify the judiciary's abrogating of the separation of powers: "if it should appear that the prosecutor is motivated to dismiss because he has accepted a bribe or because he desires to attend a social event instead of attend upon the court in the trial of the case or because he personally dislikes the victim of the crime." *Id.* at 629-30 (internal quotations and citations omitted).

power to legislate in Congress. A judge could not properly refuse to enforce a statute because he thought the legislators were acting in bad faith or that the statute disserved the public interest; it is hard to see, therefore, how he could properly refuse to dismiss a prosecution merely because he was convinced that the prosecutor was acting in bad faith or contrary to the public interest.

The Constitution does place judicially enforceable limits on the powers of the nonjudicial branches of the government—for example, the government may not make its prosecutorial decisions on racially discriminatory grounds—but they are the limits found in the Constitution and thus do not include "bad faith" and "against the public interest." Custom, limited prosecutorial resources that compel prioritizing prosecutions, federal criminal statutes that overlap with each other and with state criminal statutes, [and] plea bargaining ... combine to lodge enormous charging discretion in the Justice Department, to the occasional frustration of judges—yet without giving rise to any judicial remedy.

Paradoxically, the plenary prosecutorial power of the executive branch safeguards liberty, for, in conjunction with the plenary legislative power of Congress, it assures that no one can be convicted of a crime without the concurrence of all three branches. ... When a judge assumes the power to prosecute, the number shrinks to two.

345 F.3d at 453-54 (internal citations omitted).

Although arising in the context of the separate executive, legislative, and judicial branches of the federal government, this analysis applies with equal force to the separation of powers built into the governmental structure of the Virgin Islands established by Congress in the Revised Organic Act.[4]

---

[4] The Third Circuit Court of Appeals has described the Revised Organic Act, enacted pursuant to Congress' authority to the govern United States territories, as "'the Virgin Islands' equivalent of a constitution.'" *Virgin Islands v. Rivera*, 333 F.3d 143, 145 (3d Cir. 2003) (quoting *Brow v. Farrelly*, 994 F.2d 1027, 1032, 28 V.I. 345 (3d Cir. 1993)). The Revised Organic Act is codified in the United States Code at 48 U.S.C. §§ 1541-1645 and reprinted in the Virgin Islands Code at pages 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2004) (preceding V.I. CODE ANN. tit. 1).

## C. Writ of Mandamus

It is well recognized that a writ of mandamus is an extraordinary remedy, only to be issued in "exceptional circumstances amounting to a judicial 'usurpation of power.'" *Citibank, N.A. v. Fullam*, 580 F.2d 82, 86 (3d Cir. 1978) (quoting *Will v. United States*, 389 U.S. 90, 95, 88 S. Ct. 269, 19 L. Ed. 2d 305 (1967)). There are three factors for consideration in determining whether the writ of mandamus should be issued.

First, the petitioner must show there are no other adequate means to attain the relief it desires. *Cheney v. United States Dist. Court*, 542 U.S. 367, 124 S. Ct. 2576, 2587, 159 L. Ed. 2d 459 (2004) (citing *Ex parte Fahey*, 332 U.S. 258, 259-60, 67 S. Ct. 1558, 91 L. Ed. 2041 (1947)); *Virgin Islands v. Thomas*, 341 F. Supp. 2d 531 (D.V.I. App. Div. 2004); *see also Dawsey*, 931 F. Supp. at 401.

Second, the petitioner must show it has a clear and indisputable right to the writ. *Cheney*, 542 U.S. at 378 (citing *United States v. Kerr*, 426 U.S. 394, 403, 96 S. Ct. 2119, 48 L. Ed. 2d 725 (1976)); *Thomas*, 341 F. Supp. 2d 531; *see also Dawsey*, 931 F. Supp. at 401.

Finally, the Court, in the exercise of its discretion, must be satisfied the writ is appropriate under the circumstances. *Cheney*, 542 U.S. at 378; *see also In re Richards*, 213 F.3d at 781-82; *Dawsey*, 931 F. Supp. at 401. As this Court has previously held, though discretionary, mandamus is called for when the lower court has committed a clear abuse of discretion and that error will cause irreparable injury if it goes unremedied. *Dawsey*, 931 F. Supp. at 401; *see also Thomas*, 341 F. Supp. 2d 531 (noting the mandamus writ can be used "to prevent a trial court from usurping a power that it lacks, to compel it to exercise authority when it has a duty to do so, to rectify a clear abuse of discretion, and to correct a clear error or law").

### 1. Adequate Alternative Means for Relief

█ The nominal respondent argues that the petitioner may seek relief by petitioning the Presiding Judge under Superior Court Rule 14.[5] This

---

[5] Rule 14 provides:

Any aggrieved litigant or attorney may petition the Presiding Judge in writing for *administrative* resolution of any matter involving observance by judges or other judicial personnel of the Court's Rules of Practice and Procedure or the prompt

Court rejected this very same argument in *Thomas*, 341 F. Supp. 2d 531. In that case, the government moved to dismiss two related criminal cases so that it could then file a single information charging the defendant with the related counts to avoid multiple jury trials on the same incident. *Id.* at 533. The trial judge denied the government's motion. *Id.* We concluded that "[s]ince the government is raising a substantive *legal* question regarding the trial court's refusal to dismiss a prosecution, and not an *administrative* matter, Rule 14 has no applicability." *Thomas*, 341 F. Supp. 2d 531, 535 (citing *In re Richards*, 52 F. Supp. 2d 522, 533, 40 V.I. 161 (D.V.I. 1999), *overturned on other grounds*, 213 F.3d 773, 42 V.I. 469 (3d Cir. 2000)).

Because Rule 14 does not apply here, there is no other adequate means for relief for the petitioner.

### 2. Clear and Indisputable Right to the Writ

To issue the writ, this Court must also find that the petitioner has a clear and indisputable right to the writ. In other words, the Court must find that the trial judge clearly erred in not granting the government's motion to dismiss.

█ In *Dawsey*, this Court held that the trial judge was required to grant the government's motion to dismiss "unless she had an affirmative basis to believe that the dismissal was clearly motivated by considerations contrary to the public interest." 931 F. Supp. at 403. Nothing in *Dawsey* states or implies that there is a burden on the government to prove that dismissal is *not* contrary to the public interest. Rather, the trial judge must have a reason to believe that the dismissal was *clearly* contrary to the public interest.

The nominal respondent relies heavily on *United States v. Ammidown*, 162 U.S. App. D.C. 28, 497 F.2d 615 (D.C. Cir. 1974), a case over thirty years old from a different circuit. (Nominal Respt.'s Resp. to Petr.'s Pet. for Writ of Mandamus, at 3-6; hereinafter "Nominal Resp't".) His reliance is not well-founded in that this Court and the Third Circuit have developed their own case law on this matter. *See, e.g., In re Richards,*

---

dispatch of the Court's *business.* ... Upon receipt of the petition, the Presiding Judge shall review the matter and take such *administrative* action as is deemed appropriate. ...

SUPER. CT. R. 14 (2005) (emphasis added).

213 F.3d 773, 42 V.I. 469; *Dawsey*, 931 F. Supp. 397, 34 V.I. 174. Furthermore, the nominal respondent does not accurately portray the holding in *In re Richards*. The nominal respondent states that the holding in *In re Richards* was that prosecutors must "supply sufficient reasons that constitute more than a mere conclusory [statement]" in support of dismissal motions to allow the trial judge an opportunity to assess "the public interest in the fair administration of criminal justice and the need to preserve the integrity of the courts." (Nominal Resp't at 4-5.)

This reference to *In re Richards,* however, only quotes portions of a sentence in that decision. The complete sentence reveals that the appellate court recognized at the outset that the government had no burden to prove that dismissal was in the public interest:

> Although the burden of proof is not on the prosecutor to prove that dismissal is in the public interest, the prosecutor is under an obligation to supply sufficient reasons—reasons that constitute more than a "mere conclusory interest."

*In re Richards*, 213 F.3d at 788.

Significantly, the Third Circuit recognized that "[a] court is generally required to grant a prosecutor's Rule 48(a) motion to dismiss unless dismissal is 'clearly contrary to manifest public interest.'" *In re Richards*, 213 F.3d at 787 (citing *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975); *United States v. Miller*, 722 F.2d 562 (9th Cir. 1983); *Salinas*, 693 F.2d at 352; and *United States v. Hamm*, 659 F.2d 624 (5th Cir. 1981)).

*In re Richards* does not explain what public interest reasons would be strong enough to permit a trial judge to refuse to grant a prosecutor's motion to dismiss. However, *In re Richards* does state that the public interest "argue[s] in favor of allowing a court to force prosecutors to publicly reveal their reasons for not proceeding before granting a requested dismissal." 213 F.3d at 789. Here, the prosecutor's reason was that the defendant had apologized. In the trial judge's order denying the motion to dismiss, he writes that the reason for the dismissal is insufficient. (Nominal Resp't, Ex. 1 at 2.)

■ Under *Dawsey* and *In re Richards* a judge may refuse to grant a motion to dismiss on public interest grounds only when the judge has an affirmative basis to believe the government's motive is <u>clearly</u> contrary to the public interest. Here the trial judge noted that the "[d]efendant's

mother is a police sergeant ... [and] [g]iven [d]efendant's mother's occupation, the dismissal of the case cannot reasonably be deemed to protect the public's interest in the evenhanded administration of justice ... ." (Nominal Resp't, Ex. 1 at 2.) It does not seem the judge believed it was clearly contrary to the public interest, rather the judge seemed to just have a <u>mere suspicion</u>. Additionally, the trial judge was not justified in placing the burden on the government to prove it was not contrary to the public interest. Thus, the trial judge was not justified in denying the motion to dismiss based on any public interest ground.

### 3. Appropriate Under the Circumstances

■ Determining whether a writ is appropriate under the circumstances is largely an exercise of discretion. *See, e.g., Cheney*, 542 U.S. at 391. Here, the granting of the writ is the government's only remedy to end the prosecution with which it does not wish to proceed.

Courts generally must grant prosecutor's motions to dismiss. The Third Circuit has observed that "refusal to dismiss is appropriate only in the rarest of cases." *In re Richards*, 213 F.3d at 786. This matter is clearly not the rarest of cases. Indeed, other courts have granted writs under similar circumstances. *See, e.g., In re United States*, 345 F.3d at 454. Here, it is appropriate for this Court to grant the government's petition.

### IV. CONCLUSION

No appellate panel of this Court has ever upheld the denial of a prosecutor's motion to dismiss a charge. Petitioner has demonstrated that there is no adequate alternative means of relief, that it has a clear and indisputable right to the relief, and that the granting of the writ is appropriate under these circumstances. Accordingly, the writ will be granted.