**GOVERNMENT OF THE VIRGIN ISLANDS, In the Matter of the
Application of the Department of Human Services for the
Temporary Care, Custody and Control of: RENIQUE FRANCIS**

Civil App. No. 2005-165

District Court of the Virgin Islands

Division of St. Thomas and St. John

May 28, 2009

950

HENRY L. FEUERZEIG, ESQ., JUSTIN K. HOLCOMBE, ESQ., St. Thomas, USVI, *For the Appellant.*

DOUGLAS DICK, ESQ., St. Thomas, USVI, *For the Appellee.*

GÓMEZ, *Chief Judge of the District Court of the Virgin Islands;* FINCH, *Judge of the District Court of the Virgin Islands;* and D'ERAMO, *Judge of the Superior Court, Division of St. Croix, sitting by designation.*[1]

## MEMORANDUM OPINION

(May 28, 2009)

George H.T. Dudley ("Dudley") appeals from a June 16, 2005, order of the Superior Court requiring him to appear in person at a hearing in a matter before the Family Division as well as at all hearings in all matters in which Dudley has been appointed as counsel.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Dudley is an attorney with the law firm of Dudley, Topper and Feuerzeig, LLP ("DTF"), located on St. Thomas, U.S. Virgin Islands. On January 29, 2002, the Superior Court appointed Dudley as guardian *ad litem* for a minor in a custody dispute before the Family Division of the Superior Court, pursuant to Title 5, Section 2542 of the Virgin Islands Code.[2] On January 31, 2002, another DTF attorney, Paula D. Norkaitis, filed a notice of appearance on behalf of the minor. On October 6, 2003, another DTF attorney, A.J. Stone, III, also filed a notice of appearance on behalf of the minor. Several hearings in this matter were held before the Superior Court. The record reflects that Stone was copied on orders from the Superior Court following his notice of appearance.

On May 2, 2005, the Superior Court held another hearing in this matter. Another DTF attorney, R. Clay Travis, appeared on the minor's behalf

---

[1] Judge D'Eramo died after consideration of this appeal but before the issuance of this opinion.

[2] Section 2542 provides:

> In every case of child abuse or neglect the court shall appoint counsel for the child to act in the role of guardian ad litem. Such counsel shall be willing and competent by training or experience in representing the interests of a child in such proceedings.

V.I. CODE ANN. tit. 5, § 2542.

and stated on the record that he was standing in for Stone. The following exchange then took place between the trial judge and Travis:

The Court: Attorney Travis, were you the one appointed in this case?

Attorney Travis: No, I was not.

The Court: Where is Attorney Dudley?

Attorney Travis: I was assigned it because A.J. Stone had left the firm.

The Court: I'm going to pass this matter to give Attorney George Dudley 15 minutes to appear.

Attorney Travis: Fifteen minutes?

The Court: Yes. He was appointed to represent the minor in this matter. His appointment has not been revoked by this Court; there was no motion for substitution filed in this matter, nor approved by the Court. As far as this Court is concerned, you have no right to appear on behalf of Attorney Dudley to represent the minor at this time.

[J.A. at 8-9.]

Dudley thereafter appeared in person, and the hearing proceeded.

On June 16, 2005, the trial judge entered an order (the "June 16, 2005, Order") that provided, in pertinent part:

4. Attorney George Dudley shall appear at the next hearing and shall be prepared to represent the minor.

5. Attorney George Dudley shall ascertain the cases he has been appointed to in this Court, and shall be required to appear at the hearings, failing which, a warrant for his arrest shall be issued, in addition, he shall show cause why he should not be held in contempt of this Court.

[J.A. at 6.]

On July 11, 2005, Dudley filed a motion for substitution of counsel, asserting that

nothing in the statutes pursuant to which he was appointed or the rules of this Court preclude him from fulfilling his duty to represent [the minor] by designating any competent attorney at DTF to appear on his behalf. Further, Dudley submits that [the minor] would be better

served if she were represented by one of the more experienced litigators at DTF.

[J.A. at 25.]

On July 15, 2005, before the Superior Court ruled on Dudley's motion, Dudley timely filed a notice of appeal of the June 16, 2005, Order with this Court. Dudley thereafter filed a motion to stay the June 16, 2005, Order. On September 20, 2005, the trial judge denied both the motion for substitution and the motion to stay.

In his appeal, Dudley asks this Court to determine whether: (1) he may, as a court-appointed guardian *ad litem* , designate another DTF attorney to appear on his behalf; and (2) the trial judge abused his discretion in ordering Dudley to appear in person at all hearings as a court-appointed guardian *ad litem*.[3] In the alternative, Dudley asks the Court to issue a writ of mandamus.

## II. DISCUSSION

### A. Appealability of the June 16, 2005, Order

Before proceeding to the merits of this appeal, the Court must satisfy itself that it has jurisdiction to review the June 16, 2005, Order.

■■ This Court has jurisdiction to review final orders in civil cases. *See* V.I. CODE ANN. tit. 4, § 33. The requirement of finality, also known as the final judgment rule, means that " 'a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits.' " *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 429-30, 105 S. Ct. 2757, 86 L. Ed. 2d 340 (1985) (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374, 101 S. Ct. 669, 66 L. Ed. 2d 571 (1981)). The Supreme Court has explained that "the final judgment rule serves several salutary purposes":

It emphasizes the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many questions of law and fact that occur in the course of a trial. Permitting piecemeal

---

[3] A notice of entry of special appearance was filed in this matter on behalf of the trial judge. The trial judge thereafter filed an affidavit with the Court in which he stated that he did not authorize any attorney to make an appearance on his behalf. The Court issued a briefing schedule in May, 2006. Dudley filed a brief. No brief in opposition has been filed.

appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system. In addition, the rule is in accordance with the sensible policy of avoiding the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment. The rule also serves the important purpose of promoting efficient judicial administration.

*Cunningham v. Hamilton County*, 527 U.S. 198, 203-04, 119 S. Ct. 1915, 144 L. Ed. 2d 184 (1999) (quoting *Firestone Tire & Rubber Co.*, 449 U.S. at 374). Consistent with these principles, the Supreme Court has held that a decision is not final unless it " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521-22, 108 S. Ct. 1945, 100 L. Ed. 2d 517 (1988) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S. Ct. 631, 89 L. Ed. 911 (1945)).

■ Here, the June 16, 2005, Order does no more than require Dudley to appear in person before the Superior Court at all hearings in a matter in which he was appointed guardian *ad litem*. Accordingly, because the June 16, 2005, Order has nothing to do with the merits of the underlying action, it is not a final order on the merits that would ordinarily allow for direct appeal in this Court. The Supreme Court has, however, set forth exceptions to the final judgment rule that allow for otherwise unappealable orders to be immediately appealed. One such exception is the collateral order doctrine, as articulated by the Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949).

■ The collateral order doctrine

considers as final judgments, even though they do not end the litigation on the merits, decisions which finally determine claims of right separate from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate jurisdiction be deferred until the whole case is adjudicated.

*Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 103 L. Ed. 2d 879 (1989) (internal quotation marks and citation omitted).

■ To come within the limited class of final collateral orders, an order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S. Ct. 2454, 57 L. Ed. 2d 351 (1978); *Praxis Properties, Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49, 54 (3d Cir. 1991).

■ The Supreme Court has referred to the collateral order doctrine as a "narrow exception" that contains "stringent" requirements. *Robinson v. Hartzell Propeller, Inc.*, 454 F.3d 163, 168 (3d Cir. 2006) (citing *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868, 114 S. Ct. 1992, 128 L. Ed. 2d 842 (1994)). Furthermore, "failure to meet one prong makes the doctrine inapplicable no matter how compelling the other prongs may be." *Virgin Islands v. Hodge*, 45 V.I. 738, 359 F.3d 312, 320 (3d Cir. 2004).

In *United States v. Bertoli*, 994 F.2d 1002 (3d Cir. 1993), the Third Circuit Court of Appeals applied the collateral order doctrine under circumstances strikingly similar to those in the matter before this Court. In *Bertoli*, the appellant was a law firm that sought review of an order from the district court appointing the firm standby counsel for its former client in the government's criminal prosecution of that client. 994 F.2d at 1005. The district court's order required the firm to serve without compensation, mandated the presence of an attorney from the firm at all pretrial proceedings, and specifically dictated the presence of two named partners of the firm throughout the trial.[4] *Id.*

On appeal, the firm contended that the appellate court had jurisdiction under the collateral order doctrine as stated in *Cohen. Id.* The government countered that the order was not appealable or otherwise reviewable until the district court entered a final order holding the firm in contempt. *Id.* The Third Circuit "agree[d] with the government that *Cohen* does not apply because the order is subject to review on appeal from a final order

---

[4] The order provided, in relevant part:

Counsel's presence will be required at all pretrial hearings and at trial from the time of jury selection through the return of a verdict; and . . . in the event *Bertoli* revokes his election to proceed *pro se* or becomes unable to proceed *pro se*, either Sachs or Chattman will be required to serve as trial counsel.

*Bertoli*, 994 F.2d at 1009.

of contempt." *Id.* The court nevertheless treated the firm's appeal as a petition for a writ of mandamus because it found that the order raised "fundamental, unsettled issues concerning a district court's inherent power over the attorneys who practice before it . . . ." *Id.*

The *Bertoli* Court considered each element of the collateral order doctrine in concluding that the district court's order was not appealable. The court found that the first element was satisfied because the order "conclusively determined the disputed question." *Id.* at 1012. In making that determination, the court differentiated two types of non-final orders: those that are "inherently tentative" and those that "although technically amendable, are made with the expectation that they will be the final word on the subject addressed." *Id.* (quotation marks and citations omitted). The court reasoned that the possibility that the district court would amend its order was "too remote to deny finality." *Id.*

With respect to the second element of the collateral order doctrine, the *Bertoli* Court stated simply: "Neither party to this appeal contests the presence of the second factor, the importance of the issue or its collateral nature; nor do we." *Id.* at 1011.

As for the third element, the *Bertoli* Court rejected the law firm's argument that "an order directing it to provide professional services to a client who does not want them is, by its very nature, effectively unreviewable after," *id.* at 1012, reasoning that the district court's order would "be reviewable on appeal from a final order of contempt," *id.* (citations omitted). The court was not persuaded by the law firm's invitation to "draw a brightline rule that non-parties can never seek appellate review of an order directed against it without suffering contempt." *Id.* Rather, the court made clear its preference "to postpone review of an order directed against a non-party until the case is concluded in the district court or until the non-party has been held in contempt." *Id.* at 1013 (citations omitted). The court explained its rationale:

> We have never heretofore held that Cohen allows an attorney to appeal an order directing the continued provision of litigation services to a client for whom an appearance has been entered in an ongoing case. Appealability of such orders would pose a substantial likelihood of frequently unacceptable delay and substantially interfere with the fair and speedy disposition of many criminal cases . . . . Where a claim is adequately vindicable after final judgment, Cohen jurisdiction is in-

appropriate. Given the availability of contempt as a method to secure review, the third prong of Cohen is not met on the facts of this case.

*Id.* at 1014 (quotation marks and citations omitted). Applying these standards, the Third Circuit found that the order was "not final and [that it] lack[ed] appellate jurisdiction under Cohen . . . ." *Id.*

██ In the matter before this Court, as in *Bertoli*, the June 16, 2005, Order mandating Dudley's in-person attendance does not satisfy the third element of the collateral order doctrine because Dudley could appeal a final order of contempt in the event he violated that order. Dudley does not contend, nor does the record reflect, that he has violated the June 16, 2005, Order or that he has been held in contempt. As such, this Court lacks jurisdiction to review the June 16, 2005, Order.[5]

## B. Mandamus Relief

Dudley urges that even if this Court lacks jurisdiction to hear this appeal, the Court should nevertheless issue a writ of mandamus, as did the *Bertoli* Court. Dudley neglects to explain precisely how he envisions that form of relief to be fashioned.

██ In *Bertoli*, the Third Circuit explained that an appellate court may choose to treat an appeal of a non-final order as if it were a petition for

---

[5] Dudley contends that the collateral order doctrine does apply to the June 16, 2005, Order. To buttress that contention, Dudley relies on the decision of the Seventh Circuit Court of Appeals in *Synergy Assocs. v. Sun Biotechnologies, Inc.*, 350 F.3d 681 (7th Cir. 2003).

In *Sun Biotechnologies*, an attorney was allowed to withdraw as retained counsel for his client due to his client's non-payment of attorneys' fees. 350 F.3d at 682. The district court subsequently appointed the attorney to represent that same client pro bono and overruled the attorney's objection to the assignment. *Id.* The attorney thereafter filed a motion for relief from the appointment, arguing that the pro bono appointment did not comply with the local rules of the Northern District of Illinois. *Id.* at 683. The district court denied that motion. *Id.* The Seventh Circuit reversed the district court's ruling, finding that "the method by which the judge made [the attorney's] appointment, and his justification for selecting him as [the client's] attorney, did not comply with the pro bono appointment procedures." *Id.* at 684.

Dudley's reliance on *Sun Biotechnologies* is misplaced for at least two reasons. First, the facts of that case bear little, if any, resemblance to those in the matter before this Court. There is therefore no foundation for Dudley's contention that the order in that case is "similar" to the June 16, 2005, Order. [*See* Br. of Appellant at 2.] Second, the Seventh Circuit based its decision almost exclusively on the district court's erroneous application of the local rules in that district. The application of those rules, of course, has no effect on the propriety of the June 16, 2005, Order.

a writ of mandamus. 994 F.2d at 1014. To do so, an appellate court must conclude that "fundamental undecided issues that implicate not only the parties' interests but those of the judicial system itself are present." *Id.* (citations omitted).

Unlike in *Bertoli*, Dudley has explicitly requested, in the event the Court finds that it does not have jurisdiction over this appeal, that his appeal be treated as a petition for a writ of mandamus.[6] Because the Court has found that it lacks jurisdiction over this appeal, the Court will address whether the alternative relief Dudley requests is warranted. *See, e.g., Wilderman v. Cooper & Scully, P.C.*, 428 F.3d 474 (3d Cir. 2005) (dismissing an appeal for lack of jurisdiction and denying mandamus relief where the appellants appealed a ruling of the district court and explicitly sought, in the alternative, a writ of mandamus); *In re Diet Drugs Prods. Liab. Litig.*, 418 F.3d 372 (3d Cir. 2005) (similar); *Transtech Indus. v. A & Z Septic Clean*, 5 F.3d 51 (3d Cir. 1993) (similar).

■ A writ of mandamus is an extraordinary remedy, only to be issued in "exceptional circumstances amounting to a judicial 'usurpation of power.' " *Citibank, N.A. v. Fullam*, 580 F.2d 82, 86 (3d Cir. 1978) (quoting *Will v. United States*, 389 U.S. 90, 95, 88 S. Ct. 269, 19 L. Ed. 2d 305 (1967)). "Appellate courts generally utilize mandamus only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it [has the] duty to do so.' "

---

[6] The *Bertoli* Court determined that the order in that case warranted at least consideration of mandamus. While recognizing that "there are sound reasons for denying an appeal as of right under the Cohen doctrine," 994 F.2d at 1015, the court noted that the order in that case was not unprecedented and that it could have adverse consequences for the law firm if the firm could not seek appellate review without being held in contempt. *See id.*

Having determined that mandamus should be considered, the Third Circuit also determined that issuing a writ of mandamus was appropriate. With respect to that part of the order requiring the presence of particular attorneys from the law firm, the court first acknowledged that "when an attorney enters an appearance, it is at least traditional to treat it as his individual assumption of responsibility." *Id.* at 1020. The court reasoned, however, that "[i]t is enough if the district court requires the presence of an attorney who has the basic competence needed to advise [the client] about the fundamentals of trial proceedings." *Id.* at 1021. The court thus found that delegation to another competent attorney in the law firm would not offend the administration of justice, and that the district court had abused its discretion in requiring the presence of particular attorneys. *Id.* at 1020-21, 1027. Accordingly, the Third Circuit granted the writ of mandamus, prohibiting the district court from, *inter alia*, ordering particular attorneys from the law firm to be present at any pretrial proceeding or the trial itself. *Id.* at 1027.

*Bertoli,* 994 F.2d at 1014 (quoting *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 26, 63 S. Ct. 938, 87 L. Ed. 1185 (1943)).

 "Three conditions must be satisfied for the issuance of a writ of mandamus: (1) there must be no other adequate means to attain the relief sought; (2) the right to issuance of the writ must be clear and indisputable; and (3) the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *In re Pressman-Gutman Co., Inc.,* 459 F.3d 383, 399 (3d Cir. 2006) (internal quotation marks omitted) (citing *In re Briscoe,* 448 F.3d 201, 211 (3d Cir. 2006); *Cheney v. United States District Court for the District of Columbia,* 542 U.S. 367, 380-81, 124 S. Ct. 2576, 159 L. Ed. 2d 459 (2004)); *see also Dawsey v. Gov't of the V.I.,* 34 V.I. 174, 931 F. Supp. 397, 401 (D.V.I. App. Div. 1996) *aff'd,* 106 F.3d 384 (3d Cir. 1996).

 The first prerequisite for mandamus — whether Dudley has no other adequate means to attain the relief sought — is unmet for essentially the same reason that the collateral order doctrine is inapplicable. Dudley can appeal a final order of contempt in the event he violates that June 16, 2005, Order. There is no evidence in the record that Dudley has violated that order, has been held in contempt for such a violation, or has sought review of a contempt order. Under the facts of this case, the Court is persuaded that the availability of such review disfavors a finding that Dudley has no other adequate means to challenge the June 16, 2005, Order. *See In re SEC ex rel. Glotzer,* 374 F.3d 184, 188 (2d Cir. 2004) (noting that "generally, a litigant who wants to challenge a [trial court] order must disobey the order, be held in contempt of court, then bring an appeal; mandamus is not usually appropriate where such path is available"). *But see Bertoli,* 994 F.2d at 1015 ("On the facts of this case we do not think that the availability of review after a future contempt order precludes our immediate consideration of [mandamus].").[7]

---

[7] The *Bertoli* Court appeared to find the first element required for mandamus relief satisfied because the order in that case was "unprecedented" and could have had "adverse consequences" for the law firm. *Id.* at 1015.

Here, it can hardly be said that wielding the threat of sanctions over an attorney for non-attendance in court is unprecedented. Indeed, attorney sanctions are not a new or infrequent phenomenon. Furthermore, while several sanctions, cumulatively, could potentially have ill effects on an attorney's professional reputation, the Court is far from convinced that a single threat of sanctions rises to the level of adverse consequences the *Bertoli* Court contemplated. *See, e.g., In re Huertas,* 274 Fed. Appx. 118, 121 (3d Cir. 2008) (not precedential)

Because the first mandamus prerequisite is not attendant, the Court need not reach the other two prerequisites. However, Dudley's claim for mandamus relief would fail even if the second prerequisite were considered. The second prerequisite for mandamus calls on the Court to decide whether Dudley's right to the writ is clear and indisputable. That inquiry requires the Court to determine whether the effect of the June 16, 2005, Order is within the trial court's authority.

The effect of the June 16, 2005, Order is essentially twofold. First, the order mandates Dudley's presence at the next hearing in this matter.[8] Second, it requires Dudley to apprise himself of the cases in which he has received court appointments and personally appear at all hearings in such matters, lest a warrant for his arrest issue and he be required to show cause.[9]

---

(noting that a judge "may use contempt or the threat of contempt to enforce her orders" where, after a litigant failed to "appear for a scheduled conference or inform the District Court that he would not attend[,] [t]he District Court rescheduled the conference with a warning that [the litigant] would be held in contempt if he did not appear").

[8] The record does not reflect if the trial court has scheduled or held that hearing. Indeed, the record does not reflect if this matter is still pending before the trial court. However, it is worth noting that the June 16, 2005, Order is more than three years old as of this appeal. There is some likelihood, therefore, that the order, insofar as it requires Dudley's presence at the next hearing in this matter, is moot. Because the Court finds, however, that the trial judge acted within his authority in issuing the June 16, 2005, Order, the Court need not address whether any portion of the order is moot.

[9] In *Bertoli*, the Third Circuit recognized the power of the judiciary to ensure the smooth administration of justice. *See* 994 F.2d at 1016. Having recognized that inherent power, the *Bertoli* Court proceeded to analyze whether requiring particular attorneys to attend proceedings was within the district court's discretion. *See id.* at 1019. The court reasoned that requiring *some* attorney from the law firm to be present during proceedings would be reasonable to ensure efficiency during what promised to be a complex case. *See id.* at 1019-20. The district court's order, however, required the presence of two particular attorneys. Accordingly, the Third Circuit held that "the scope of the order . . . clearly exceed[s] what is necessary to meet the essential needs of the court and the litigants in this case." *Id.* at 1020.

While instructive, *Bertoli* is not dispositive of this appeal. In *Bertoli,* the notice of appearance on behalf of the law firm's former client was entered by the firm itself, not the particular attorneys whom the district court ordered to appear personally. *See* 994 F.2d at 1006. Here, the court appointment was directed at Dudley himself, not other members of DTF. Furthermore, the client of the law firm in *Bertoli* was an adult who elected to proceed *pro se. See id.* at 1005. Therefore, according to the Third Circuit, the district court's order should have been fashioned to do no more than to ensure that courtroom decorum was observed. *See id.* at 1021. That goal, the Third Circuit observed, could be achieved merely by requiring a competent attorney from the firm.

██ ██ As the *Bertoli* Court noted, the Supreme Court has observed that "attorneys are officers of the court, and are bound to render service when required by such an appointment." *Bertoli*, 994 F.2d at 1016 (quoting *Powell v. Alabama*, 287 U.S. 45, 73, 53 S. Ct. 55, 77 L. Ed. 158 (1932)). The Court has also stated that "every court has power, if it deems proper, to appoint counsel where that course seems to be required in the interest of fairness." *Id.* (quoting *Betts v. Brady*, 316 U.S. 455, 471-72, 62 S. Ct. 1252, 86 L. Ed. 1595 (1942)). The Third Circuit has explained that a trial court has the power to compel an unwilling lawyer to provide representation at trial because

> the court's responsibility for the administration of justice would be frustrated were it unable to enlist or require the services of those who have, by virtue of their license, a monopoly on the provision of such services. Attorneys who have the privilege of practicing before the court have a correlative obligation to be available to serve the court.

*United States v. Accetturo*, 842 F.2d 1408, 1413 (3d Cir. 1988).

██ In *Bertoli*, the court added an additional layer of gloss to that explanation:

> Power inherent in the function of the judiciary exists so that a court may manage its affairs to achieve the orderly and expeditious disposition of cases. Such power can be invoked by a court to manage its docket as well as regulate the conduct of its bar.

994 F.2d at 1016.

Pursuant to that power, trial courts routinely require the presence of counsel at hearings and conferences before the court. *See, e.g., In re Diebold ERISA Litig.*, Civ. No. 06-0170, 2008 U.S. Dist. LEXIS 42746,

---

Here, the Superior Court appointed Dudley as guardian *ad litem* because the minor could not — either practically or statutorily — represent himself. Consequently, the reasoning in *Bertoli* is not readily engrafted onto the facts of this case. Finally, the order in *Bertoli* required the attorneys in that case to appear at pretrial proceedings, some of which were to take place in the Cayman Islands, and throughout the trial, which was estimated to last two to four months. *See id.* at 1005-06. The June 16, 2005, Order, in contrast, requires only that Dudley appear at the next hearing in this matter, ascertain those cases in which he has been appointed to represent clients before the Superior Court, and appear at hearings in such cases. Those requirements are substantially less onerous than those imposed by the order in *Bertoli.*

at *37 (N.D. Ohio May 28, 2008) ("Counsel shall appear in person."); *Miklos v. Principi*, Civ. No. 01-2205, 2006 U.S. Dist. LEXIS 37669, at *51 (W.D. Pa. Mar. 16, 2006) ("Counsel shall attend in person . . . ."); *Am. Med. Sec., Inc. v. Exec. Risk Specialty Ins. Co.*, 393 F. Supp. 2d 693, 713 (E.D. Wis. Sept. 30, 2005) ("Counsel shall appear in person."). Indeed, this Court, in its trial capacity, has exercised that authority on several occasions.

■ The authority of a trial court to exercise such authority is particularly important where a minor is involved. The Fifth Circuit has expounded on the important function of guardians *ad litem*, explaining that the Federal Rules of Civil Procedure authorize their appointment "where the interests of the minor's general representatives . . . may conflict with the interests of the person . . . who might otherwise be represented by such general representatives." *Gaddis v. United States*, 381 F.3d 444, 453 (5th Cir. 2004) (citations omitted); *see also Pressman-Gutman Co.*, 459 F.3d at 400 ("[F]ederal courts always have had the power to appoint special representatives for persons whose general representative has conflicting interests." (citing 6A WRIGHT, MILLER & KANE, *Federal Practice and Procedure: Civil* 2d § 1570, at 498 (1990)). The Fifth Circuit has further explained that "[t]he need to protect the minor's or incompetent person's rights and interests in federal court proceedings is extremely vital; this is why 'it is within the district court's discretion to determine [the minor's] need for [guardian *ad litem*] representation, and who may best fill that need.' " *Id.* (citations omitted) (alterations in original). Other courts have also remarked on the importance of guardians *ad litem*, both to appointing courts and minors. *See Jones v. Harrison*, Civ. No. 04-3287, 2004 U.S. Dist. LEXIS 9741, at *4 (N.D. Ill. May 28, 2004) (noting that "the role of the guardian ad litem has been described as an arm of the court" (citation omitted)); *Kulya v. City & County of San Francisco*, Civ. No. 06-06539, 2007 U.S. Dist. LEXIS 21932, at *4 (N.D. Cal. Mar. 9, 2007) (noting that "[w]hen choosing a guardian ad litem for a civil lawsuit, the most important issue is protection of the minor's interest in the litigation" (citation omitted)).

Virgin Islands law explicitly authorizes the Superior Court to appoint a guardian *ad litem* to represent "[a] child alleged to be delinquent, or . . . where a child is alleged to be a person in need of supervision . . . ." V.I. CODE ANN. tit. 5, § 2505(a). Virgin Islands law further provides that the guardian "shall be willing and competent by training or experience in

representing the interests of a child in such proceedings." *Id.* at § 2542. Pursuant to that authority, the Superior Court appointed Dudley as a guardian *ad litem* in this matter.[10]

The order appointing Dudley stated that he was "appointed to represent the defendant in all matters pertaining to this action of the Territorial Court[11] unless and until relieved by order of the Territorial Court and thereafter unless and until relieved by order of the District Court." [J.A. at 2.] Dudley does not assert, nor does the record reflect, that Dudley sought or that the Superior Court or this Court issued an order relieving him of his appointment.

▮ In addition to their power to require the presence of attorneys at various proceedings, courts also have the power to impose contempt sanctions. Criminal contempt consists of an unconditional penalty that is "imposed retrospectively for a 'completed act of disobedience.' " *Int'l Union v. Bagwell*, 512 U.S. 821, 828, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994). "The primary purpose of criminal contempt is punitive, to vindicate the authority of the court and thus is characterized by the imposition of an unconditional fine or sentence." *Roe v. Operation Rescue*, 920 F.2d 213, 216 (3d Cir. 1990)).

In the Virgin Islands, Title 14, Section 581 of the Virgin Islands Code vests courts with the

> power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other as —

---

[10] Dudley does not question the statutory basis of the Superior Court's authority to appoint counsel. That fact distinguishes this matter from *Mallard v. United States Dist. Court for Southern Dist.*, 490 U.S. 296, 109 S. Ct. 1814, 104 L. Ed. 2d 318 (1989). In that case, an attorney represented three indigent prisoners in a 42 U.S.C. § 1983 action. The attorney thereafter sought to withdraw because "he had no familiarity with the legal issues presented in the case." *Id.* at 299. The motion was denied on the ground that 28 U.S.C. § 1915(d) "empowers federal courts to make compulsory appointments in civil actions." *Id.* at 300. The attorney sought mandamus relief. The court of appeals denied the attorney such relief. The Supreme Court reversed, holding that "§ 1915(d) does not authorize the federal courts to make coercive appointments of counsel." *Id.* at 310. Unlike *Mallard*, there is no claim, nor any evidence, in this matter that Dudley's appointment was coercive or that the Superior Court otherwise exceeded its statutory authority in appointing Dudley.

[11] The Superior Court was previously known as the Territorial Court, which was established by the Legislature by Act 3876. Effective January 1, 2005, however, the name of the Territorial Court changed to the Superior Court of the Virgin Islands pursuant to Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004).

(1) misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) misbehavior of any of its officers in their official transactions; or

(3) disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

V.I. CODE ANN. tit. 14, § 581.

■■■ Given the inherent power of trial courts to manage their affairs, to regulate members of the Bar, and to impose criminal contempt sanctions — including imprisonment — to vindicate their authority, the Court does not find that Dudley has established a "clear and indisputable" right to mandamus relief.[12] In short, while the Court acknowledges that some portions of the June 16, 2005, Order may be unnecessarily broad to achieve the trial court's goal of maintaining the integrity of this particular case, the Court is not persuaded that any part of the order clearly falls beyond the bounds of the trial court's authority.[13] As a consequence, the Court, in its discretion, declines Dudley's invitation to issue a writ of mandamus.

Dudley advances several arguments in his brief to support his contention that the trial court abused its discretion. Significantly, those arguments appear to suggest that the trial court erred by denying Dudley's motion for substitution of counsel. That ruling, however, is not before the Court in this appeal.[14] Nevertheless, two of Dudley's arguments warrant a brief discussion.

First, Dudley argues that an attorney may substitute a colleague for personal appearances in court-appointed cases. Specifically, Dudley

---

[12] The Court recognizes that other DTF attorneys filed notices of appearance on behalf of the minor and that filings in this case were apparently served on those attorneys and not Dudley. Although not stated explicitly, Dudley appears to argue that he reasonably relied on the Superior Court's acceptance of those subsequent notices of appearance. That assertion is deficient to the extent it fails to address a trial court's inherent power to require an attorney's presence and the order's plain directive that Dudley represent the minor in this case until relieved by order of the Superior Court.

[13] Because the first and second elements required for mandamus are unmet, the Court need not reach the third element.

[14] In his notice of appeal, Dudley states that he appeals from the Superior Court's June 16, 2005, Order. The trial judge's ruling on Dudley's motion for substitution of counsel was not entered until September, 2005.

asserts that "allowing nonresidents to designate substitute counsel while barring Dudley from doing so violates the Equal Protection Clause of the Fourteenth Amendment because differentiating on the basis of residency as to whether appointed counsel may substitute a colleague serves no legitimate purpose." [Br. of Appellant at 7.] Dudley seeks support for that proposition primarily in the Supreme Court's decision in *Barnard v. Thorstenn*, 489 U.S. 546, 109 S. Ct. 1294, 103 L. Ed. 2d 559 (1989). In *Barnard*, the Supreme Court invalidated a local rule of this Court requiring an applicant to live in the Virgin Islands for one year before applying for admission to this Court's bar and to affirm an intention to reside in the Virgin Islands thereafter. The Supreme Court held that the rule violated the Privileges and Immunities Clause of the Constitution. 489 U.S. at 558-59.

 Dudley's reliance on *Barnard* is misplaced for at least two reasons. First, the *Barnard* Court relied on the Privileges and Immunities Clause of the Constitution, not the Equal Protection Clause, as Dudley asserts here. *See id.* at 558-59. Second, the record does not reflect, nor does Dudley contend, that the order requiring his attendance would not be applied with equal force to both Virgin Islands residents and nonresidents.

Dudley also asserts that his appointment as guardian *ad litem* constitutes a taking of property in violation of the Fifth Amendment. In support of that assertion, Dudley first relies on a decision of the Supreme Court of Kansas, which explained that "when an attorney is required to spend an unreasonable amount of time on indigent appointments so that there is genuine and substantial interference with his or her private practice, the system violates the Fifth Amendment." *State ex rel. Stephan v. Smith*, 242 Kan. 336, 747 P.2d 816, 842 (Kan. 1987).

 Here, there is no evidence in the record that Dudley has been required to spend an unreasonable amount of time as a guardian *ad litem* or that Dudley's appointment has substantially interfered with his private practice. Indeed, Dudley fails even to articulate such a claim. Dudley's reference to *Smith* is therefore unavailing.

Dudley's reliance on other cases to support his Fifth Amendment argument is similarly misplaced. Those cases stand for the proposition that court-appointed counsel must be reasonably compensated. Here, Dudley does not claim, nor does the record reflect, that he has not been reasonably compensated. Dudley states only that his compensation as a court-appointed guardian *ad litem* is not as great as his compensation as

a private attorney. Dudley points the Court to no authority for the dubious proposition that reasonable compensation for a court-appointed attorney translates into the same compensation that the attorney might earn in her private practice.

Finally, Dudley's reliance on *Bertoli* is puzzling, because the order in that case required the law firm to represent a pro bono litigant without *any* compensation. *See* 994 F.2d at 1005. Here again, the record does not reflect that the June 16, 2005, Order requires Dudley to serve without compensation. Consequently, Dudley falls far short of substantiating his Fifth Amendment argument.

## III. CONCLUSION

For the reasons stated above, the Court finds that the June 16, 2005, Order is not a final judgment subject to review in this Court, as contemplated by Title 4, Section 33 of the Virgin Islands Code, and that no exception to the final judgment rule applies. The Court therefore does not have jurisdiction over this appeal. The Court also declines to issue a writ of mandamus. An appropriate judgment follows.